EARNEST E. HART v. THE NONPAREIL PRINTING & PUBLISH-
ING Co., N. ELDRED and WILLIAM ARNDT, Receiver,
and THE CARPENTER PAPER COMPANY and GREAT
WESTERN TYPE-FOUNDRY Co., Interveners, Appellants.

**Adjudication:** RECEIVERS. Plaintiff sued to foreclase a chattel mort-
gage, and a receiver was appointed. Thereafter the receiver was
ordered to sell the property covered by the mortgage, and also
certain other personal property and real property not included
therein. Certain judgment creditors of the chattel mortgagor
intervened, and a decree was entered establishing their liens, to
the amount of their respective judgments, and adjudging that
no lien by reason of the receivership was acquired on any other
personalty than that covered by the mortgage; but the decree
reserved the rights of all parties claiming prior liens, not adjudi-
cated under the decree, on the funds in the hands of the receiver.
Thereafter the chattel mortgagees moved the court to charge to
the funds in the hands of the receiver, obtained from property
not covered by the chattel mortgage, the taxes of the mortgagee
and preferred labor claims, which had not been considered under
the original decree, which motion was allowed. *Held,* that the
original decree was not a complete adjudication of all the matters
in issue, so as to deprive the court of the power to make the order
as to the taxes and the preferred claims.

TAXES AND PREFERRED CLAIMS. The court had jurisdiction to deter-
mine whether the taxes and the preferred claims should be paid
out of the funds derived from the foreclosure of the chattel mort-
gage, or from the other funds in the hands of the receiver.
(The question whether contract lienors may not insist that labor
claims subsequent to the contract lien shall be paid out of prop-
erty not covered by the contract lien but covered by creditor's bill
of general creditors, is reserved for decision.—REPORTER.)

*Appeal from Pottawattamie District Court.*—HON. A. B.
THORNELL, Judge.

TUESDAY, OCTOBER 3, 1899.

PLAINTIFF brought this action August 25, 1894, to fore-
close a mortgage on personal property of the Nonpareil
Printing & Publishing Company. N. Eldred was made a

party, as a junior mortgagee. William Arndt was appointed receiver, and the appellants, creditors of the Nonpareil Company, intervened, and prosecute this appeal from an order of the court directing certain funds in the hands of the receiver to be applied to specified purposes.—*Affirmed.*

*Flickinger Bros., Harl & McCabe, Stone & Dawson,* and *O. D. Wheeler* for appellants.

*Mayne & Hazleton* for appellees.

DEEMER, J.—I.    The motion upon which the order appealed from was made was heard exclusively upon the pleadings, orders, and judgments made in this and other cases of creditors against the Nonpareil Company. These the appellant could surely have readily so abstracted as to present the case fully and without dispute as to what these records contain, yet we have abstract upon abstract, with admissions and denials by the appellant and denials by the appellee, and all these in such form as to render it difficult to know with certainty just what said pleadings, orders, and judgments do contain, and thus we are compelled to resort to a voluminous transcript to ascertain facts about which there can be no dispute. After a careful and laborious examination of this transcript, we gather the controlling facts to be as follows: On August 20, 1894, plaintiff filed his petition to foreclose a chattel mortgage on the property of the Nonpareil Company, and for the appointment of a receiver to continue the business, including the publication of the paper. This mortgage covered the presses and machinery of the Nonpareil Company; "also, all book accounts, bills receivable, notes, claims, demands of every kind and character; also, all material, fixtures, and furniture, etc., used in the publication of the *Daily* and *Weekly Nonpareil;* also, all and entire, each and singular, the subscription of the said Council Bluffs *Daily* and *Weekly Nonpareil;* also, the good will of its business, and the franchise, privi-

leges, rights, and membership belonging to said Nonpareil
Printing and Publishing Company in and to the Western
Associated Press." On October 1, 1894, the receiver filed
an inventory, including real estate, presses, etc. (values not
given), and account, subscriptions, city circulation, and
other accounts accruing prior to August 20, 1894, aggregating
five thousand seven hundred and twenty-one dollars and
sixty-seven cents. On October 2, 1894, the Carpenter Paper
Company and the Great Western Type-Foundry Company
filed their petitions of intervention, alleging that they are
creditors of the Nonpareil Company, holding unsatisfied
judgments against defendant, which are liens on the real
property sought to be sold in this proceeding. On October
10, 1894, the court ordered the receiver to sell at public sale
"the Nonpareil Printing Company plant, and, in case the
sale thereof is sufficient to discharge the liens thereon and
above referred to, then the same to be reported to the court
without further sale herein; but in case said sale is not suffi-
cient to meet and discharge the liens thereon, except the
$7,000 note held by the defendant Mary Radway, he then sell
the real estate, subject to the $7,000 mortgage; and that,
after receiving the highest and best bids offered for said
property separately, that he then and there offer said prop-
erty as a whole,—the chattel and real property, the real
property subject to the $7,000 mortgage above,—and report
his doings to the court." On October 24, 1894, said inter-
veners filed an amendment, alleging that, by virtue of the
proceedings auxiliary to execution, they have acquired a lien
and interest upon all property of the Nonpareil Company not
embraced in plaintiff's mortgage, as well as upon all surplus
over and above the amount necessary to satisfy plaintiff's
lien; that among the assets of the printing company are one
hundred and eight bottles of wine and one case of Bourbon
whisky, of the value of one hundred and twenty-five dollars,
which are not embraced in the plaintiff's mortgage, and are
detained by the receiver without authority, and that, unless

restrained by an order of court, said liquors will be squandered, consumed, or used for improper purposes, and interveners' interest therein be wholly destroyed.  On the third day of November, 1894, the receiver made application to the court as follows: "And now comes the receiver, and shows to the court that under the order he is directed to sell the property held by the mortgage herein; that, as to the personal property, there is a controversy as to what property is included therein:  *First,* as to the book accounts; *second,* property taken upon and in payment of book accounts, and reduced to possession prior to the appointment of the receiver; *third,* as to printing materials purchased for use of one Judson, and put in with the mortgaged property, and scarcely distinguishable therefrom.  Wherefore, your receiver would ask the court to construe the said chattel mortgage, and direct him what property shall be sold thereunder."  On the seventh day of November, 1894, the court ordered as follows:  "The receiver is ordered, when selling the property of the defendant, as heretofore directed, to sell the liquors (taken on account), and the good will and subscription list of the *Daily* and *Weekly Nonpareil,* but is directed not to sell the claims due the paper on subscription."  November 10, 1894, the receiver reported that he had sold all the chattel property and real property of the defendant included in the mortgage sued on, excepting the liquors named in the court order, and excepting the book accounts, to the plaintiff, Ernest E. Hart, for the sum of ten thousand dollars, subject to a mortgage on the real property of seven thousand dollars, November 17, 1894.  Said sale was confirmed, and the receiver directed to turn the property over to the purchaser.  On November 30, 1894, the receiver reported as follows:

"REPORT OF THE RECEIVER.

| | |
|---|---:|
| Alleging that in order to run the paper he had made a loan of | $ 2,750 00 |
| That he received from subscriptions, advertisements and job work during the time he was running same as receiver | 5,327 37 |
| Making total receipts | $ 8,077 37 |

That he had paid out for job department, materials, Associated Press reports and labor............ ............ .................... $ 8,194 77
That there is still due and unpaid on the books of the company, for subscriptions, advertising, and job work.......... 7,116 98
That there was on hand at the time of the sale, material and unfinished job work.......... ...................... ............ 612 56
The liabilities of the receiver unpaid at this time, including the loan.................................................................. 4,239 42

*Recapitulation.*

Receipts from business.. ........................ ...................... $ 5,327 37
"         "      sales of material on hand............................. .. 612 56
Borrowed ........................................................ .................. 2,750 00
From sale of property.......................... ............ ............ ....... 10,000 00

Total receipts. ...................... ............................ ................ $18,689 93
Amount paid out, as shown above................................. 8,194 77

On hand to be applied as directed by court .......... .................. $10,495 16

"Also, that the following preferred claims for labor performed within 90 days have been filed, and found correct: [Here follows list of labor claims allowed, aggregating $723.95 ; claim of C. G. Saunders for defending the Nonpareil Printing and Publishing Company, $187.56.] That he has received on all subscriptions accruing prior to August 20, 1894, $448.82. That he has received on book accounts accruing prior to August 20, 1894, $888.17. Total amounts collected, accruing prior to August 20, 1894, $1,336.99. This amount is included in the $5,227.37 above collected."

On November 19, 1894, the receiver's report was approved, and an order of distribution of the proceeds of the receiver's sale made, as follows: "Attorney's and receiver's fees, $1,600; the taxes assessed against the company for the year 1893, $387.42; funds borrowed by the receiver to preserve the property, $2,750; the preferred claims above set out, $913.51; the past due interest on the $7,000 loan on real estate sold, $663.56; the judgment and costs in N. Eldred v. Nonpareil Printing & Publishing Company, rendered at the August term, $5,146.88; the judgment of N. Eldred v. Nonpareil Printing & Publishing Company, $767.21; the costs and judgment rendered in this case."

On August 24, 1894, an order was made permitting appellants to file a petition against the receiver; and on December 6, 1894, they filed said petition, alleging, in substance, as follows; That they were judgment creditors of the Nonpareil Company, an insolvent corporation having no property subject to levy (setting forth said foreclosure proceedings, the appointment of the receiver, and that he was

in possession of all the property, subject to the order of the court) ; that the value of the property is in excess of the liens thereon ; that a large part of the chattel property held by the receiver is not embraced within the mortgage liens, but is subject to appropriation by the general creditors of said insolvent corporation; that said property so held by the receiver cannot be levied upon, nor reached by garnishment or other processes, and that by reason thereof plaintiffs are without remedy at law to enforce their judgments upon any surplus, or upon property not embraced in the mortgage liens; that defendant Arndt was in fact only receiver of the chattel property; that the property in controversy came into his hands without authority; and that a large amount collected by him out of the choses in action is now in his hands, subject to plaintiff's lien.   They ask that the order appointing the receiver should be construed to limit his rights to the property covered by the chattel mortgage; that his possession of the property in controversy be held unlawful; that the assets of the Nonpareil Company be marshalled, and the amount of the lien be established, and a finding made as to what chattel properties in the hands of the receiver are not subject to the mortgage.   They ask that their judgments be established as liens on all the property of the Nonpareil Company subject to such liens as are properly chargeable thereon, and upon all other property of the Nonpareil Company in the hands of the receiver not covered by the mortgage, and that the receiver be directed to pay to them the property, or the proceeds thereof, on which their judgment shall be established as a lien.   The Nonpareil Printing & Publishing Company appeared, and asked that the relief prayed for be granted.   On December 10, 1894, the following order was entered of record : "Now, on this 10th day of December, 1894, this cause comes on for hearing on the application of the Carpenter Paper Company, intervener, to set aside the order heretofore made confirming the report of the receiver; and upon agreement of the parties, and to the end that interest

may be saved on the debts ordered paid at the time of the approval of said report, it is ordered that all funds in the hands of the receiver derived from subscriptions earned at the date of his appointment, and all funds derived from book accounts held by the defendant corporation at the date of said appointment, be loaned to the fund derived from the sale of property covered by plaintiff's mortgage and from the earnings and receipts of the corporation since the receivership, to be paid out as heretofore ordered; but said receiver is ordered to repay said sums out of future collections made by him from subscriptions earned during the receivership, and from moneys due him for advertising or other work done by him as such receiver since his appointment, and to hold, receive, and maintain a sum equal to his total collections on book and subscription accounts earned before his appointment, and the said funds shall be hereafter disposed of as if the same was the original fund derived from said sources." On January 25, 1895, E. E. Hart and William Arndt, receiver, answered said petition, admitting that property is held by the receiver which is not embraced in the chattel mortgage, and denying all other allegations. They further answered that the property sought to be reached is in the possession of the receiver for the benefit of all creditors, that he was so in possession at the time of the filing of said petition, and that by reason of this fact, and that said property is in the custody of the court, the appellants are not entitled to the relief demanded. In an amendment to their petition, appellants alleged that the property referred to as not being embraced in the mortgage consists of the book accounts generally, and all accounts and amounts accruing and collected, or to be collected, on account of subscriptions to the *Daily* and *Weekly Nonpareil;* also, a certain stock of liquors and wines, of the value of one hundred and twenty-five dollars. On the twenty-fifth day of March, 1895, the case was heard on the issues joined on appellants' petition, and a decree rendered establishing their liens, to the amount

of their respective judgments, upon the property in their petition described, and that the order of priority of said liens be in the order of the filing of their petitions herein.  It was decreed that the Carpenter Paper Company have a specific lien upon the amounts in the hands of the receiver, the proceeds of collections of accounts and bills receivable of the Nonpareil Company, and upon the uncollected accounts and bills receivable, and upon the stock of wines and liquors, to the amount of its judgment, to-wit, eight hundred and sixty-seven dollars and seventeen cents, and eight dollars and fifty cents costs ; also that the Great Western Type-Foundry Company have a specific lien upon the same assets to the amount of its judgment, to-wit, one hundred and forty dollars, and one dollar and fifty cents costs.   Similar decrees were made to other creditors.     It was ordered that the receiver pay to the clerk the amount in his hands, the proceeds of such accounts and bills receivable, to-wit, one thousand three hundred and thirty-six dollars and ninety-nine cents, and such other sums as he may have collected since the date of his last report, and that he turn over to the clerk, for such disposition as the court may order, all the accounts and bills receivable of the Nonpareil Company which had been contracted or existed up to the time of his appointment as receiver.  "It is further ordered, adjudged, and decreed by the court that no lien or interest in said property by reason of said receivership was acquired by the court in the action in which said Arndt was appointed receiver, and that said property is subject and liable to the lien for plaintiff's creditors' bill herein." It was further ordered that the Nonpareil Company pay the costs of this action, and that appellants have special execution on their judgments against the property described, "this decree reserving the rights of all parties claiming prior liens, not herein adjudicated, on said funds, and the right of the court to determine their priority;" also, that the amount be turned over to the clerk, to be by him applied to the satisfaction of the judgments referred to, in the order of their pri-

ority as set out, and that said judgments or such parts thereof as may not be satisfied out of said moneys shall be satisfied out of the accounts, bills receivable, and other personal property in the hands of the receiver, by special execution, or in such manner as the court may hereinafter order and direct. On the second day of April, 1895, E. E. Hart and N. Eldred filed their motion asking the court to charge to the funds in the hands of the receiver collected from the accounts of the defendant the Nonpareil Printing & Publishing Company, made prior to the appointment of the receiver, the claims allowed as preferred claims herein, to-wit: "(1) Taxes of said company for the year 1893; (2) the account of C. G. Saunders for legal services for said Nonpareil Company before and up to the appointment of the receiver, as shown by his said claim on file; (3) the preferred labor claims for labor performed prior to the appointment of the receiver, amounting in the aggregate to $715.95; (4) the amount paid to the Associated Press for dispatches under contract accruing prior to the time the receiver went into possession; (5) the proportionate part of the receiver's expenses." They state as cause that said claims are not properly chargeable against the funds arising from the sale of the mortgaged property. On August 10, 1896, this motion of E. E. Hart and N. Eldred was sustained "as to the first and third ground, and said motion is overruled as to the other grounds" (that is, the motion was sustained as to the amount paid for taxes of 1893 and the labor claims), and it is from this ruling that the Carpenter Paper Company and the Great Western Type-Foundry Company appeal.

This prolix statement seems necessary to a proper understanding of the matters presented in argument. It will be observed that the effect of the court's ruling was to require the taxes for the year 1893, and the preferred claims for labor performed before the appointment of the receiver, to be paid out of the funds on which Hart had no lien, rather than to

take these amounts from the sum obtained by the receiver from the property covered by the Hart and Eldred mortgages. This, of course, will take that much from the fund upon which appellants have liens in virtue of the proceedings instituted by them.

Appellants contend that the decree passed March 25, 1895, was a complete adjudication of all matters at issue between the parties, and that the trial court had no power or authority to make the order of date August 10, 1896. It is true that the decree of March 25th finds that no lien or interest in certain of the property was acquired by reason of the receivership in the action in which Arndt was appointed, and that such property was subject and liable to the lien created by the creditors' bills filed by appellants; and the receiver was directed to turn over this property or its proceeds to the clerk of the district court, to be disposed of as the court shall direct. But the decree expressly recites: "This decree reserving the rights of all parties claiming prior liens, not herein adjudicated, on said funds, and the right of the court to determine their priority." All that the court attempted to adjudicate was the fact that there was certain property taken by the receiver on which neither Eldred nor Hart had a lien in virtue of the receivership proceedings, and that appellants did have a lien thereon, by reason of having commenced actions to subject the same to the payment of their judgments. No other claims or liens were attempted to be adjudicated. In fact, they were expressly reserved for future consideration. In making the motion of date April 2, 1895, neither Hart nor Eldred was claiming a lien on the property. They simply asked that certain preferred claims be ordered paid out of property which the court had theretofore determined was not covered by their mortgages. If these claims were liens, they were not adjudicated in the previous decree, because the claimants were not made parties to the suit, and their rights were expressly reserved from the operation of the decree. The court was simply asked to make

an order on its receiver, and the decree of March 25th did not take away its jurisdiction to do so. As the receiver was at all times subject to the order of the court, it was perfectly proper for the court to give him direction as to how to proceed. We do not think there was an adjudication of the matters referred to in the motion of Hart and Eldred of April 2, 1895, by the decree of March 25th. It may be that the order was erroneous, but it was not without jurisdiction.

II. It is said that, as the court found that the receivership proceedings created no lien upon certain of the property that was a conclusive disposition of the right to subject it to the payment of taxes and labor claims. We do not think so. If there had been no receivership, and appellants had proceeded to subject the property to the payment of their judgments, the debts owing for labor and the taxes would have been preferred and paid in full. The finding, then, that the receivership created no lien, did not in any manner dispose of the claims for taxes or for labor against the fund in question. True, Hart and Eldred had no claim upon this particular property, but they are not now asserting that they had. Here is some property and a fund in court. On part of it Hart and Eldred held liens in virtue of their mortgages and the receivership proceedings. On another part of it appellants, creditors of the same debtor, have a lien in virtue of their equitable proceedings to subject it. Here are some taxes due on all the property, and some claims for labor; and the question is, out of which fund shall these claims be paid? The property and funds are all in court, and subject to its orders. Certainly that court had the right to say how those preferred claims should be disposed of. But it is said that the receiver had already paid these preferred claims at the time Hart and Eldred filed their motion. The record does not substantiate this contention. The claims were filed with the receiver, but there is no showing that they were paid prior to the time of the filing of the motion. But, in any event, the order of December 10, 1894, preserved the

rights of all parties to the funds of the receiver, the same as if he had done nothing relating to the claims for labor.

This practically answers all claims made by appellants' counsel, although they say, in a few brief words, that, if it be conceded that the court had jurisdiction, still the ruling on the motion was erroneous, and that in no event should the court have done more than charge the preferred claims proportionately upon the funds on which the respective creditors held liens. It would seem from the ruling that the court did, in effect, make a proportionate charge; for it overruled three grounds of the motion, one of which, at least, was based on a labor claim. There was, in effect, an apportionment of these claims, and the record is not such as to justify us in holding that it was unfair or inequitable. The case comes to us on assignments of error attacking the ruling on the Hart and Eldred motion, and not *de novo*, and there is no such showing as will justify us in interfering. It is proper to say that counsel do not present the question as to the proper construction of section 4019 of the Code, and we do not determine whether a creditor who has a contract lien upon property, acquired long prior to the time labor is performed with or upon it, has the right to insist that preferred labor and tax claims shall be paid out of the proceeds of other property, with which or upon which the laborer performed work, and that is not covered by contract lien, but against which general creditors have acquired a lien by creditors' bill. That is a question of considerable difficulty, and we do not care to pass upon it without full argument. There is no prejudicial error in the proceedings, and the order appealed from is AFFIRMED.