LENA OLSON JONES, Administratrix, Appellant, v. CERNAL T. KNUTSON et al., Appellees.

No. 40437.

JANUARY 13, 1931.

REHEARING DENIED APRIL 11, 1931.

C. H. E. Boardman, for appellant.

Lee, Steinberg & Walsh, for appellees.

FAVILLE, J.—The appellees owned a farm in Hardin County. The Collins Mortgage Company held a first mortgage on said farm in the principal sum of $8000. The appellant's intestate held a second mortgage on said real estate for $3000, which by its terms was subject to said first mortgage and which was executed by appellees. At the September term, 1928, of the district court (the exact date not appearing), the appellant brought suit for foreclosure of said second mortgage. It appears from the allegations of the petition that decree of foreclosure was entered and that subsequently the property was sold at sheriff's sale and later redemption was made from said sale by the appellees. It also appears from the petition that "after the commencement of foreclosure proceedings on the second mortgage," (but whether before or after decree therein does not appear), the appellant paid to the said Collins Mortgage Company $400, being the interest due on the said first mortgage, on August 1, 1927, and that said payment was made to prevent the foreclosure of the said first mortgage. It also further appears that "while plaintiff (appellant) held the sheriff's certificate of sale covering the premises above described, and before the year of redemption had expired, that plaintiff (appellant) caused to be paid to the Collins Mortgage Company the further sum of $400, which paid the interest to August 1, 1928, on the first mortgage." It is alleged that this payment was made in order to protect appellant's interest in the premises and to save the cost of foreclosure of said first mortgage. It is then alleged that in December, 1928, the appellees redeemed said property from the appellant's foreclosure of said second mortgage. This suit is brought to recover the $800 so paid by the appellant in said two installments, and appellant prays that she may be subrogated to the rights of the holder of the first mortgage as to said interest payments, and that a lien be established against said premises to said extent in behalf of the appellant. The motion of the appellees to dismiss appellant's petition, while in a number of paragraphs, in general effect challenges the sufficiency of the petition to state a cause of action, and particularly alleges that the statutes of Iowa "have provided a new remedy by which a junior lienholder may protect himself on paying off a prior lien, and such new remedy is exclusive" and that the appellant has failed to follow the procedure

prescribed by the statute as shown by the petition.

I. Chapter 501 of the Code is as follows:

"The holder of a sheriff's sale certificate or junior lien upon any real estate after the delinquency of any taxes or special assessment, or of interest on any senior lien, or breach of any condition of a senior incumbrance, upon payment by him, or performance of the condition broken, shall have a lien upon said real estate for such expenditures and interest thereon of equal priority with the lien so held by him upon his filing with the clerk of the district court in the county in which the land is situated, a verified statement of said expenditures and the dates thereof, together with a description of the real estate, the name of the record owner, and a reference to the lien which he holds, and may recover the same in any action brought for the foreclosure of the junior lien referred to in said verified statement.

"When such advancements have been made by the holder of a sheriff's sale certificate the sum so advanced shall be a part of the amount required to redeem from said sheriff's sale.

"It shall be the duty of the clerk of the district court to record the statements so filed in the incumbrance book and to enter the same in the lien index. Payments advanced after execution has been issued upon the junior lien, shall be added to the execution upon receipt, by the sheriff, of a verified statement of such advancements and when the redemption period has expired the clerk shall release them on his record."

This chapter as originally enacted by the Fortieth General Assembly became effective April 2, 1923. It was amended by the Forty-second General Assembly by the insertion of the clause respecting payments advanced after execution has been issued, and this portion of the statute became effective July 4, 1927. There was no statute in this state pertaining to the general subject-matter of Chapter 501 until the enactment of the statutes referred to. Of course, under long existing statutes, creditors could redeem from each other where there had been execution sales, but there was no provision contemplating any such remedy as is set out in the chapter above quoted. Prior to the enactment of said statute, at common law in this state, a junior lienholder, for the purpose of protecting his security, might pay

the interest on a prior mortgage and would be entitled to be subrogated to the rights of a senior mortgagee under said mortgage. In so doing, we have held that the second mortgagee was not an intermeddler or a volunteer.

In Bennett v. First National Bank, 128 Iowa 1, we said:

"We have no hesitation in affirming that part of the decree which sustained the plaintiff's claim to be subrogated to the lien of Carter under the first mortgage. The plaintiff, as the holder of a judgment lien which was junior to the mortgage, had the right to protect her security by paying the mortgage debt and succeed to the rights of the mortgagee. Such payment was not the act of a mere intermeddler or volunteer, and the cancellation of the mortgage of record will not necessarily defeat such subrogation, save as against the intervening rights of third parties without notice. This rule was announced by us in the late case of Bowen v. Gilbert, 122 Iowa 448, where, as in the present case, a lienholder paid off a prior mortgage, and caused it to be released of record. It is quite certain from the record that plaintiff did not intend to release or waive any security to which she was entitled, but gave up the old mortgage and took the renewal under the belief that she was obtaining a first lien on the property. It is also certain that the defendant bank is in no manner prejudiced by denying to it the unearned advantage which it seeks. The decree in this respect does no more than to hold that a payment made by the plaintiff in good faith to protect her lien shall not operate to destroy the value of that lien, and permit a junior creditor to have precedence over her. The justice of the rule here stated has long been recognized."

See, also, to the same effect, Bowen v. Gilbert, 122 Iowa 448; Gulick v. Peckenpaugh, 154 Iowa 380. Were it not for said statute, there could be no question but that the appellant would be entitled at common law to subrogation, under the facts pleaded in this case. The appellees contend that the statute above quoted has abrogated the prior existing rule of the common law and has provided a new and exclusive remedy for a junior encumbrancer who seeks to protect his security against an outstanding senior encumbrance.

At this point, the question for our determination is

whether or not the statute in question supersedes the rule of the common law, or, in other words, does the statute merely provide an additional remedy for a junior encumbrancer.

In Swinney v. C., R. I. & P. Ry. Co., 123 Iowa 219, we considered the question of the effect of subsequent legislation upon a prior existing remedy. We said:

"It is well settled that, even where a statutory remedy is provided for, it is not to be construed as exclusive of a previously existing common-law remedy, unless the language of the statute requires such construction. See notes in 13 L. R. A. 92."

In the opinion in said case we made reference to 13 L. R. A. 92, and in the note at said citation, the following statement appears:

"It may be laid down as a general rule that when a statute prescribes a new remedy the plaintiff has his election either to adopt such remedy or to proceed at common law. Such statutory remedy is cumulative, unless the statute expressly, or by necessary implication, takes away the common-law remedy. Miles v. O'Hara, 1 Serg. & R. 32; Boaz v. Heister, 6 Serg. & R. 20; Almy v. Harris, 5 Johns. 175; Farmer's Turnp. R. Co. v. Coventry, 10 Johns. 389; Colden v. Eldred, 15 Johns. 220; Booker M'Robert, 1 Call. 243; Bearcamp River Co. v. Woodman, 2 Me. 404; Fryeburgh Canal v. Frye, 5 Me. 38; Baltimore v. Howard, 6 Harr. & J. 383; Coxe v. Robbins, 9 N. J. L. 384; 3 Chitty, Pr. 130."

In Shaw v. Merchant's National Bank of St. Louis, 25 L. Ed. 892, the Supreme Court of the United States said:

"No statute is to be construed as altering the common law, further than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express."

See, also, Fitzgerald v. Quann, 17 N. E. 354; Brown v. Barry, 1 L. Ed. 638; Johnson v. Southern Pacific Company, 117 Fed. Rep. 462.

Applying the foregoing general rule to the facts of the instant case, we think it must be apparent that the statute in

question does not by its terms attempt to abrogate the existing common law remedy which permitted a junior lienholder to protect his security by paying off a prior existing lien, and upon so doing being subrogated to the rights of the holder of said prior lien as against the debtor. Nothing can be found in the statute in question, by the most rigid and careful examination, that indicates an intent that the remedy therein provided for is to be exclusive or that the prior common law remedy of subrogation then existing was intended to be abrogated by said statute. The statute does no more than provide a new and additional remedy, available to a junior encumbrancer, under certain exigencies therein set forth.

██ II. It is further contended that the appellant cannot recover in the instant case because of the rule that a party suing cannot split his cause of action but must in one action bring forward all of his claims growing out of the transaction in question. This rule is particularly applicable in cases where a mortgagee in one action seeks foreclosure of a mortgage, and in a subsequent action asks for personal judgment against the debtor. In such event he could have recovered on both remedies in the first action and must be content with what he first recovers. Sweeny v. Daugherty, 23 Iowa 291; Oliver v. Montgomery, 39 Iowa 601; Hempstead v. City of Des Moines, 63 Iowa 36; Kenyon v. Wilson, 78 Iowa 408; Smith Lumber Company v. Sisters of Charity, 146 Iowa 454; Merrifield v. Clark, 199 Iowa 171; Schnuettgen v. Mathewson, 207 Iowa 294.

This rule has no application to the pleaded facts in the instant case, which are admitted by the motion to dismiss. The appellant had not paid the first installment of interest at the time of the commencement of the suit for foreclosure of her mortgage under the allegations of her petition. She could not therefore have included it in her action at the time it was commenced. She subsequently acquired it while the litigation was pending, but at just what stage does not appear in the record. It may be true that she would have had the right to have filed a supplemental petition and included it in her action for foreclosure, but this she did not do. Nor was she required so to do. The important thing to be remembered at this point is that the appellant did not own the claim for interest paid on the senior mortgage at the time she commenced her action of fore-

closure. She therefore had no action to split at that time. The only claim she had was her claim of foreclosure of her own mortgage which she then sought to assert. The fact that she subsequently acquired another and independent claim by the payment of interest on the first mortgage does not defeat her of her right to subsequently recover on said claim in an independent action.

We see no basis upon which to hold that the appellant has split her cause of action, either as to the $400 which she acquired *after the commencement of her original action,* or the $400 item which she did not acquire until *after the sheriff's sale on execution.* We therefore reach the conclusion that the appellant's petition stated a good cause of action as to both of the items of interest therein referred to and that the trial court erred in sustaining the appellees' motion to dismiss said petition.

The cause must be, and it is,—Reversed.

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.