CENTRAL STATE BANK, Trustee, Appellee, v. O. P. HERRICK, Appellant.

No. 41013.

JANUARY 12, 1932.

REHEARING DENIED APRIL 8, 1932.

C. E. Hunn and H. S. Hunn, for appellant.

Joseph I. Brody and Dunshee & Brody, for appellee.

KINDIG, J.—On and before December 1, 1915, the trustees of the Frederick M. Hubbell Estate owned certain real estate in Des Moines described as Lot 4, Block 1, Allen's Addition. James A. McCoy, Sr., and James A. McCoy, Jr., on December 1, obtained from the Hubbell trustees a lease covering the real estate for the period of seventy years and one month. The lessees, McCoys, assigned the lease to another, and that assignee again assigned the same. Other assignments were made until May 1, 1916, when the lease through assignment came into the possession of the Accessory Sales Company. Thereafter the Accessory Sales Company assigned the lease to John A. Benson and W. C. Jaeger. Benson and Jaeger executed forty bonds each in the denomination of $500, and secured the same by a trust deed on the leasehold. This trust deed named the Central Trust Company of Des Moines as trustee.

Then on May 19, 1924, Benson and Jaeger again assigned the lease to Thomas W. Doll who assumed the bonds and the covenants named in the trust deed. Following that transaction, Doll, on February 27, 1926, assigned the lease to the defendant-appellant, O. P. Herrick. That assignment specifically provided that the transfer was "subject to the trust deed." It appears, however, that the appellant did not expressly assume the obligations of the trust deed.

The Central Trust Company, on November 13, 1926, became insolvent and resigned its position as trustee, and the plaintiff-

appellee, the Central State Bank, was then appointed successor trustee under the trust deed above named. Central State Bank v. Benson, 209 Iowa 1176. Accordingly, on November 29 thereafter, the original trustee, the Central Trust Company, assigned all its rights under the trust deed to the new trustee, the Central State Bank. So, on September 27, 1928, the appellee, as plaintiff, commenced an action to foreclose the trust deed, and judgment was granted accordingly. See Central State Bank v. Benson (209 Iowa 1176), supra. While the petition in foreclosure in the case above named asked for an accounting of the rents, taxes, etc., yet the district court expressly refused to pass thereon, and in its judgment reserved the issue in the following language: "The prayer for an accounting is denied at this time, and the court makes no finding thereon, but (it) may be taken up later."

O. P. Herrick, the appellant, paid the rentals of $150 per month on the leased property to September 1, 1928, but did not pay rental thereafter, although he remained in possession of the premises until December 10, 1928. Such rentals included taxes and special assessments. All such taxes and special assessments were paid by the appellant until the year 1928, when the same became delinquent in the sum of $1,930.84. A provision of the lease is to the effect that when taxes and assessments become delinquent "such amounts and interest shall be admitted and taken and are hereby declared to be so much additional and further rent for the above demised premises."

After the aforesaid delinquency, the lessors, trustees of the Frederick M. Hubbell Estate, paid the taxes and interest on the first day of December, 1928. Then, on December 22 of that year the trustees of the Frederick M. Hubbell Estate assigned its claim for the said rent and taxes to the appellee under an instrument containing, among others, the following recitation:

"Now, therefore, the undersigned (the trustees of the Frederick M. Hubbell Estate) hereby acknowledge receipt of said sums (the rents, taxes, etc.) from the said Central State Bank, Trustee (appellee), and hereby assign and transfer to said Central State Bank, Trustee, any and all claims, demands and causes of action, which it now has or which it previously had, for said sums arising under said lease against the original

lessees, James A. McCoy, Sr., and James A. McCoy, Jr., and any and all subsequent assignees or corporations or persons claiming or assuming to be such, to wit: Accessory Sales Company, John A. Benson, W. C. Jaeger, Thomas W. Doll, and/or O. P. Herrick and/or the person in possession, O. P. Herrick.''

Hence, on December 28, 1928, the present action was commenced by the appellee to recover the aforesaid rents and taxes and on December 30, 1930, a judgment was entered against appellant in appellee's favor for the sum of $2,440.07. From this judgment the appellant appeals.

I. At the outset, it is argued by appellant that the present controversy was fully adjudicated and determined by the aforesaid foreclosure proceeding. See Central State Bank v. Benson (209 Iowa 1176), supra.

While it is true that the petition in the foreclosure proceeding sought to recover for the rents, etc., yet the case was not fully tried on that issue. When the foreclosure suit was commenced, the appellee in this case had not yet acquired the rents, taxes, etc., from the trustees of the Hubbell Estate. The foreclosure action was started on September 27, 1928, but the rents and taxes were not assigned to appellee by the trustees of the Hubbell Estate until December 22, 1928. Moreover the district court expressly excluded the present issue from the foreclosure proceeding. In effect the district court dismissed the portion of the petition in the foreclosure action relating to the rents and taxes now involved in the present controversy. Obviously, then, the issues now under consideration were not involved, and therefore not determined in the foreclosure suit. Johnson v. Smith, 210 Iowa 591; Tutt v. Smith, 201 Iowa 107; Ford v. Dilley, 174 Iowa 243; Christie v. Iowa Life Insurance Company, 111 Iowa 177; Hart v. Nonpareil Printing & Publishing Co., 109 Iowa 82.

II. Even though the matter has not been adjudicated, it is further contended by the appellant that appellee, through the aforesaid transaction with the trustees of the Hubbell Estate, simply advanced the payment of the taxes under the trust deed. So appellant insists the only remedy to recover therefor is a suit under the mortgage which was previously foreclosed. All the moneys used by appellee with which to buy from the trustees of the Hubbell Estate the claim for the rents and taxes,

appellant asserts, were advanced by the bondholders under the trust deed.

Wherefore, appellant concludes, as before suggested, that the money having been advanced by the appellee as trustee under the trust deed, the only remedy now afforded to obtain reimbursement is through the foreclosure of the trust deed. This action is at law and appellant maintains that the same cannot legally be separated from the foreclosure suit previously tried.

To begin with, the trial court was justified under the record in finding that the bondholders advanced the aforesaid moneys to the appellee for the purpose of purchasing said claim for the rents and taxes. Unless that purchase was to be made, the bondholders would not have thus advanced their money to the trustee. It was not the intention of the bondholders to advance such money to the trustee in order that the latter might pay the rents and taxes and collect therefor under the trust deed in the foreclosure proceedings; but rather it was the purpose of such bondholders, when paying the money to the trustee, that the latter should, upon payment thereof to the lessors, receive from them an assignment quite independent of the trust deed. That is the method pursued by the trustee, and the trustee in fact did pay the rent and taxes to the lessors independent of the trust deed, and received an assignment from the lessors therefor. This is in conformity with the conclusion of the district court.

Consequently there is but one further proposition to be considered at this juncture, and that is whether the present claim for rent and taxes was merged in the mortgage. Whether or not merger exists depends primarily upon the facts and circumstances of the case, and the intention of the parties. National Surety Co. v. Bankers' Trust Co., 210 Iowa 324; Jones v. Knutson, 212 Iowa 268. Here, it is to be recalled, the appellee when commencing the foreclosure suit had not bought the claim in question or received an assignment thereof from the trustees of the Hubbell Estate. At least, then, when the foreclosure action was commenced the appellee had no right to include in its petition the issue concerning the present claim. Undoubtedly, on account of these facts, the district court expressly excluded that issue from the foreclosure proceedings. During the discussion in Jones v. Knutson, supra, this court said:

"The appellant had not paid the first installment of interest at the time of the commencement of the suit for foreclosure of her mortgage under the allegations of her petition. She could not, therefore, have included it in her action at the time it was commenced. She subsequently acquired it while the litigation was pending, but at just what stage does not appear in the record. It may be true that she would have had the right to have filed a supplemental petition and included it in her action for foreclosure, but this she did not do. Nor was she required so to do. The important thing to be remembered at this point is that the appellant did not own the claim for interest paid on the senior mortgage at the time she commenced her action of foreclosure. She therefore had no action to split at that time. The only claim she had was her claim of foreclosure of her own mortgage which she then sought to assert. The fact that she subsequently acquired another and independent claim by the payment of interest on the first mortgage does not defeat her of her right to subsequently recover on said claim in an independent action."

Clearly the Jones case is decisive of the point now under consideration and further discussion thereof can be of no avail.

III. Furthermore, it is claimed by the appellant that the appellee can not recover in this case because the provisions of the lease were not expressly assumed in writing or otherwise by the former. It is to be recalled that appellant received an assignment of the lease in writing, but his acceptance thereof was not in writing. Because there was no express assumption of the provisions of the lease in an independent written acceptance of the assignment, the appellant maintains that he is not liable to the appellee for the rent and taxes now in suit. His thought seems to be at this juncture that his liability, if any, should be on quantum meruit.

Specific rentals are named in the lease. This specification includes not only the monthly payments, but the delinquent taxes as well. Immediately upon entering into possession of the premises, appellant commenced performing, and thereafter until default in paying the rents and taxes involved in this suit continued to perform, the terms and conditions stipulated in the lease. When so doing, appellant made no exception to any pro-

visions in the lease. Provision ten of that agreement contains the following material stipulation:

"All the provisions, conditions and covenants of this lease whether it be so expressed or not shall bind and inure to the benefit of (as the case may be) the heirs, successors, and executors, administrators, and *assigns* of the respective parties hereto." (The italics are ours).

As assignee, then, appellant is bound by the provisions of the lease, according to the stipulation quoted. He not only receives the benefits of the possession and use of the premises, but is bound as well by the "provisions, conditions, and covenants" of the lease. Although he did not do so in writing, appellant nevertheless accepted the written assignment of the lease. By so doing he is bound by the provisions, conditions, and covenants imposed by the lease, although such result was not "expressed" in the written assignment. Such is the express provision of the paragraph in the lease above quoted. Under the quoted provision above set forth, the benefits not only inure to the assignee, but the obligations bind him as well. Knowing of the quoted provision in the lease, appellant, even though not in writing, nevertheless accepted the assignment thereof. The assignment carried with it all, as distinguished from separate parts only, of the lease. It is quite immaterial, then, whether appellant accepted the assigned lease in writing or otherwise. There was an assignment of the lease to appellant and he did, in fact, accept the same.

Appellant took possession of the premises under the lease immediately after receiving the assignment thereof on February 27, 1926. In fact, appellant thus took possession under the lease by virtue of the assignment, which was duly recorded in the office of the Polk County Recorder. Then appellant remained in possession of the premises under the lease from that date until December 10, 1928. During that period of time appellant paid the rentals and taxes named in the lease until the delinquency occurred which prompted this suit. Although the lessors, the trustees of the Hubbell Estate, did not consent in writing to the assignment of the lease to appellant at the time it was made, yet they acquiesced therein and by implication consented thereto, and appellant at this time can not say that the

lease was not properly assigned. Whatever restriction there may have been in the lease against its assignment without the lessors' written consent has been waived by the lessors. Under those circumstances, the lessee is in no position to say that the transfer of the lease to him was invalid. Snyder v. Bernstein Brothers, 201 Iowa 931; 16 Ruling Case Law, p. 853, sec. 355. The assignment being valid, then, appellant in accepting the lease thereunder at least, through the above quoted stipulation, agreed to pay the rent therein named. Throughout the entire term of appellant's tenancy he assumed and purported to hold under the assigned lease. So far as the rent is concerned the appellant at all times has recognized that the amount named in the lease was the sum to be paid by him. Possession of the premises was obtained by appellant through the assigned lease, and in no other way.

Not only that, but appellant in addition thereto, immediately upon receiving the assignment, re-leased the premises to other tenants and collected rent therefor from them. Those tenants under the sublease performed the same obligations as did appellant under the lease. These tenants held the premises only because appellant had received an assignment of the aforesaid lease. There could be no sublease unless appellant held the said assigned lease as a basis to support the sub-tenancy. They could not continue as sub-tenants of appellant unless he paid the rents required by the assigned lease and kept that instrument in full force and effect. The trustees of the Hubbell Estate, as lessors, permitted such sub-tenants of appellant to take possession of the premises and pay appellant rent therefor. Appellant, in effect, when sub-leasing the premises to the above mentioned sublessees, agreed to keep the tenancy in existence under the assigned lease. This burden carried with it the obligation on appellant's part to pay the rents due under the assigned lease. From all the record, including the acts and conduct of the parties, it fairly appears, the district court could find, that appellant when receiving the assignment agreed with his lessors, the trustees of the Hubbell Estate, that he would pay the rent and taxes.

Manifestly, under the above circumstances, appellant, the district court could find, has agreed to pay the rent and taxes named in that contract during the period of his occupancy.

Brayton v. Boomer, 131 Iowa 28; Schick v. Davenport Realty Co., 200 Iowa 997. See also Kennedy Brothers v. Iowa State Insurance Co., 119 Iowa 29. In Pickler v. Mershon, 212 Iowa 447, it was said that the written acceptance of an assigned lease, with the lessor's consent, creates a privity of contract between such lessor and the assignee even though the assignment contains no express language whereby said assignee assumes the obligations of the lease. The word "accept," it is said in the Pickler case, "within the meaning of the law means something more than to receive. It means to adopt and to agree to carry out the provisions" of the assigned instrument. While it is true that the acceptance of the assigned lease by the appellant in the case at bar was not in writing, nevertheless he did accept the assigned lease. A written acceptance is not the criterion, but rather the material step in the transaction is that there was in fact an acceptance. Such acceptance may be oral or written. Proof of acceptance may be found in the acts and conduct of the parties. Schick v. Davenport Realty Co. (200 Iowa 997), supra; Brayton v. Boomer (131 Iowa 28), supra.

After reviewing the entire record, the district court found that appellant accepted the lease and assumed the obligations thereunder. There is support in the record, as above indicated, for that conclusion of the trial court. The case was tried below to the court, the jury being waived. Therefore, when, as here, there is substantial support for the finding, this court can not interfere therewith. Bank of Pulaski v. Bloomfield State Bank, 210 Iowa 817; Hamaker v. Johnson, 199 Iowa 1298; Kirkhart v. Hamilton, 199 Iowa 1028. By reaching the conclusion in the foregoing division of the opinion, the rule is recognized that a tenant's obligation to pay rent is not necessarily terminated by the mere fact that he, with the acquiescence of the landlord, assigned the lease. See Keeley v. Beenblossom, 183 Iowa 861. What is said above is in recognition of, and in harmony with, that rule. Whether the original lessee and the assignees of the lease before appellant were released under the facts in the case at bar, we do not now decide.

IV. As previously explained, the district court gave appellee judgment against the appellant for the sum of $2,440.07. $500.00 thereof consists of the monthly rentals due figured on the basis of $150 per month. There were three months and ten

days during which the rent was not paid. For the full three months the amount on that basis would be $450.00. Ten days, or one-third of a month, under the rent named would amount to approximately $50.00. The monthly rentals therefore amount to $500.00. Added to that sum is $1,930.84 taxes and assessments. Thus making the amount of the two items $2,430.84. Furthermore there was interest due from the maturity date, amounting to $10.01 aggregating in all, then, $2,440.85. Consequently the judgment is a trifle less than the total amount due.

■ But appellant objects because the district court allowed attorneys' fees on the amount due. He complains in argument because: First, there is no written contract providing therefor; and, second, if such contract does exist the statutory affidavit was not filed as required by Section 11646, Code, 1931 (in effect similar to Section 3870 of the 1897 Code). According to the amended abstract, however, the lease in question did provide for attorneys' fees in the case of suit. Moreover, it is shown in the amended abstract that a sufficient statutory affidavit was duly filed with the petition at the commencement of this action.

So, there remains for further determination but one question: to wit, was the judgment in the case at bar "recovered upon a written contract containing an agreement to pay an attorney's fee," as required by Section 11644 of the 1931 Code (in effect similar to Section 3869 of the 1897 Code)? Appellant says the judgment was not recovered upon such contract, while appellee assumes the contrary position. The lease, of course, is a written contract originally made, as before explained, by the trustees of the Hubbell Estate, as lessors, and the McCoys as lessees. Such lease, through assignment, became the obligation of appellant. Without repeating the discussion upon this proposition contained in the foregoing division of this opinion, it is by reference inserted here. It was there held that the appellant accepted the assigned lease and assumed the obligation to pay rent. See Schick v. Davenport Realty Co. (200 Iowa 997), supra; Wightman v. Spofford, 56 Iowa 145; McGregor Subdivision Co. v. Mabie, 194 Iowa 1259; Duntz v. Ames Cemetery Association, 192 Iowa 1341.

As before explained, the lease itself contained a stipulation providing that an assignee thereof assumed the obligations therein specified. This lease containing that assumption clause was

assigned in a unilateral writing to appellant, whereupon the latter accepted the same. Appellant, then, is bound by a written contract. That assigned lease expressed the mutual obligations of the parties, "and although not signed by the" appellant "nor accepted by him in writing, it was nevertheless a written contract, unilateral in form." Reynolds v. Johnson, 199 Iowa 1055 (local citation, 1058). To the same effect see McDermott v. Mahoney, 139 Iowa 292, and Bankers' Trust Co. v. Rood, 211 Iowa 289. For a case supplementing the rule here announced, see Cooper v. Marsh, 201 Iowa 1262. Accordingly, appellee was armed with a written contract, as contemplated by statute, and therefore the appellant is liable for the statutory attorneys' fees.

Consideration has now been given to all the propositions argued by appellant. The grounds stated for reversal "must be argued or they will be considered abandoned." Miller v. Swartzlender & Holman, 192 Iowa 153.

Wherefore, the judgment of the district court should be, and hereby is,—Affirmed.

WAGNER, C. J., and EVANS, FAVILLE, ALBERT, MORLING, and GRIMM, JJ., concur.