BARKER DEVELOPMENT COMPANY, Plaintiff-Appellee,

v.

UNIBANK & TRUST COMPANY, CORALVILLE, Iowa, Defendant-Appellant.

No. 2–65239.

Court of Appeals of Iowa.

Oct. 27, 1981.

W. Don Brittin, Jr., of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for defendant-appellant.

Bruce L. Walker of Phelan, Tucker, Boyle & Mullen, Iowa City, for plaintiff-appellee.

Submitted to OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

CARTER, Judge.

Defendant bank appeals from a judgment for plaintiff-lessor in this suit to collect for rental obligations purportedly incurred by the bank as an assignee of a commercial lease. On appeal, the bank asserts that much evidence of the assignment to it was inadmissible under the statute of frauds and that the admissible evidence was not sufficient to support a finding that the bank assumed the obligation for further rental payments under the lease.

On April 20, 1972, plaintiff, Barker Development Company, entered into a written agreement with Paul M. Kennedy, Sr., d/b/a Kennedy Auto Market (Kennedy) for the lease of a building, owned by plaintiff, to Kennedy. The lease included an option to extend the term for an additional five years. On November 1, 1976, Kennedy, with plaintiff's written consent, "assign[ed], transfer[ed], set over and deliver[ed] to Breitbach Auto and Truck Sales, Inc., that certain lease agreement." That same day, Breitbach accepted the "assignment" and agreed to fulfill all the terms and conditions thereof. Plaintiff, however, did not release Kennedy from liability under the lease. In July of 1976, the defendant bank (hereinafter "the bank") began to provide "floor plan" financing for Breitbach's auto dealership and, in connection with a loan agreement, required Breitbach to give the bank security interests in certain of its assets. Defendant further required Breitbach to give, as collateral, an "assignment" of the lease for the premises. An instrument was executed on July 28, 1976, wherein plaintiff and Breitbach agreed to 1) extend the lease another five years as of July 1, 1977, 2) discharge Kennedy from liability during the extended period, and 3) assign the lease to the bank. In this instrument, Breitbach further "covenanted" with the bank for Breitbach to fulfill obligations in the lease and to hold the bank harmless therefrom.

Plaintiff consented to the extension "provided that the lessee or its assign are not on default on the terms and conditions of said lease." The bank was not a signatory of that instrument.

In the fall of 1976, Breitbach experienced financial difficulties and shortly thereafter went out of business. Pursuant to the security agreements, the bank took possession of Breitbach's assets and continued the business on the leased premises. The bank hired William Cubbage to manage the operation until he was prepared to take over the business on his own. Expenses for December, 1976, and January, 1977, including lease payments, were paid by checks written on Breitbach's account at the bank. These checks were drawn by William D. Cubbage, "for uniBank & Trust." Cubbage, in the meantime, formed Hawkland Motors, Inc., which started paying rent on the premises in February, 1977.

In May of 1977, the bank desired to assign its interest, as lessee, to Hawkland Motors, Inc. The lease provided that it could not be assigned without the consent of the plaintiff. Plaintiff agreed to the assignment by the bank to Hawkland in the writing which contained the assignment,

but it was therein stated "this consent does not release the Assignor from the obligation to make payment of rent due thereunder and to perform other obligations to be performed by the Lessee thereunder." The instrument containing the assignment of the lessee's interest and the plaintiff's consent to such assignment bears the signatures of plaintiff, an officer of the bank, and Hawkland.

In October, 1977, Hawkland went out of business. Shortly thereafter the bank filed a petition seeking foreclosure of its security interests and appointment of a receiver to take possession of Hawkland's assets. From November, 1977, through April, 1978, the bank paid the rent on the premises; rent for May, 1978, was paid by the court-appointed receiver. After Hawkland's liquidation that same month, the receiver delivered the keys to the premises to plaintiff. Thereafter, both parties advertised the premises for lease. As a result of plaintiff's efforts, the City of Iowa City leased the premises for the months of February and March, 1979. Plaintiff subsequently entered into a five year lease with Elmer Peters commencing May 1, 1979.

Plaintiff filed this action on July 27, 1978, and, after several amendments to the petition, trial to the court was held on March 19 and 20, 1980. Judgment was entered against the bank for $33,924.36 on May 19, 1980. This appeal followed.

**I. Scope of Review.** Since this is an action at law, our review is on assigned error only. Iowa R.App.P. 4.

**II. Statute of Frauds.** In its first assignment of error, the bank argues that trial court erred in admitting oral evidence for purposes of establishing its acceptance of the lease assignment because such evidence was incompetent under the statute of frauds, section 622.32, The Code.

Section 622.32 states:

Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent:

1. Those made in consideration of marriage.

2. Those wherein one person promises to answer for the debt, default, or miscarriage of another, including promises by executors to pay the debt of the decedent from their own estate.

3. Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year.

4. Those that are not to be performed within one year from the making thereof.

The duration of the lease in the present case exceeds one year and, therefore, it appears to fall under subsection 3 unless the contract giving rise to defendant's assumption of the obligations contained in the original lease is exempted from the provisions of this statute.

In this regard, section 622.33 provides: The provisions of subsection 3 of section 622.32 do not apply where the purchase money, or any portion thereof, has been received by the vendor, or when the vendee, with the actual or implied consent of the vendor, has taken and held possession of the premises under and by virtue of the contract, or when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds.

While it has been held that part performance or payment of rent under an oral lease for a term of more than one year will not take the case out of the statute of frauds (*see, e.g., Snater v. Walters*, 250 Iowa 1189, 1199, 98 N.W.2d 302, 308 (1959)), we believe that a different result should follow with respect to establishing the acceptance by a third party of a written lease signed by the original lessor and lessee. While not discussing the application of the statute of frauds, the court in *Central State Bank v. Herrick*, 214 Iowa 379, 240 N.W. 242 (1932), held that such acceptance could be shown by acts and conduct. We conclude in the present case that the conduct of the bank is sufficient to place the case without the statute of frauds for purposes of proving acceptance of the obligations of the written lease by the bank as assignee of the lessee's interest.

Plaintiff's evidence of the bank's acceptance of an assignment of the lessee's interest under the lease is also not precluded by the statute of frauds for two other reasons. First, much of the proof needed to support the trial court's finding that defendant assumed the obligations of the lease came from the testimony of defendant's own agents or employees. Such evidence is admissible under section 622.35, The Code, which provides: "The oral evidence of the maker against whom the unwritten contract is sought to be enforced shall be competent to establish the same." Lastly, we conclude that even if the statute of frauds does apply, its requirements are fully satisfied in the present case by reason of the written instrument executed by the parties on May 26, 1977, wherein the lessee's interest in the lease was assigned to Hawkland Motors, Inc., subject to the conditions imposed by the plaintiff. This is a writing signed by both plaintiff and defendant which is sufficient to satisfy the requirements of the statute of frauds and which demonstrates a recognition by the parties of defendant's liability for payment of rent. The provisions of this assignment can be interpreted as sufficient to establish, as of May 26, 1977, the bank's obligation under the lease for both prior and future rental payments. But clearly, the instrument at least recognizes that the bank shall be liable for future rental payments. The only payments which are at issue in the present case are those which accrued subsequent to May 26, 1977.

III. **Substantial Evidence.** We next consider the bank's claim that the evidence is insufficient to support the trial court's finding that the bank was liable for the rental called for throughout the remaining period of the lease.

■ We begin our analysis with the general principles of assignment. An assignment is a transfer of rights. *Broyles v. Iowa Dept. of Social Services*, 305 N.W.2d 718, 721 (Iowa 1981), citing 6A C.J.S. *Assignments* § 2 (1975); Restatement (Second) of Contracts § 149 (Tent. Draft Nos. 1–7, 1973). In this sense, duties can-

not be assigned, they are delegated by the obligor to a person who assumes the obligation. Restatement (Second) of Contracts § 160, comment a at 363–64 (Tent. Draft Nos. 1–7, 1973). The parties often do not, however, distinguish between these words of art and a purported "assignment" may actually manifest an intention that the assignee be substituted for the assignor. *Id.* The Restatement states the principle as follows:

(1) Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

Restatement (Second) of Contracts § 160 (Tent. Draft Nos. 1–7, 1973).

■ Although, in the present case, the assignment of the lessee's interest to the bank was initially for security purposes, it became much more than this as a result of the subsequent acts of the parties. We believe the evidence sustains the trial court's findings that the bank assumed the unperformed duties owed to the plaintiff under the lease. The bank relies upon the cases of *Central State Bank v. Herrick*, 214 Iowa 379, 240 N.W. 242 (1932); and *Berg v. Ridgway*, 258 Iowa 640, 140 N.W.2d 95 (1966); as standing for the proposition that unless an assignment of the lessee's interest under a lease is accepted in writing by the assignee, the obligation to pay rent does not extend beyond the period of occupancy. We believe the holdings of these cases must be limited to their particular facts. The extent of the obligations which are accepted by the assignee of the lease is a matter of contract. As so viewed, the extent of the obligations accepted depends entirely upon the terms of the agreement in the particular case. Naturally, it is easier to prove acceptance of rental obligations for the period of occupancy than it is to prove that such obligations extend throughout the entire unexpired period of the lease. But this should not prevent enforcement of the lat-

ter type of obligation in those instances where it can be proved with certainty. In the present case, we conclude that the trial court's finding that the bank was liable for rental payments accruing subsequent to its occupancy is fully supported by the terms and conditions of the written assignment of lease executed by the parties on May 26, 1977.

We have considered all issues presented and find no basis for reversal.

AFFIRMED.

All judges concur except JOHNSON, J., who dissents.

JOHNSON, Judge (dissenting).

I dissent.

I strenuously disagree with the majority's conclusion that the conduct of the bank is sufficient to place this case outside the statute of frauds or that, even if the statute of frauds applies, its requirements are fully satisfied by the written instrument (plaintiff's exhibit 22) executed on May 26, 1977.

Focusing on the facts of this case, in light of section 160 of the Restatement (Second) of Contracts, I conclude that the "assignment" from Breitbach to uniBank is a mere transfer of rights without delegation of the lessee's obligations. First, plaintiff's exhibit no. 3, entitled *Assignment of Lease and Consent and Exercise of Option to Extend Lease*, in pertinent part states:

> That the lessee, Breitbach Auto and Truck Sales Inc., in consideration of one dollar and other good and valuable consideration does hereby assign said lease to uniBank and Trust Company of Coralville, Iowa, together with its rights in and to any extention of said lease, commencing July 1, 1977 for five years. And the Lessee Breitbach Truck and Sales Inc., hereby covenants with UniBank and Trust Company of Coralville Iowa to promptly pay said rent, due under said lease and to fulfill the obligations of said lease as required by the term and conditions there, and hold said UniBank and Trust Company harmless therefrom.

> The lessor, Barker Development Company, hereby agrees to said extension of said lease, provided that the lessee or its assign are not on default on the terms and conditions of said lease of July 1, 1977, and it is further agreed by Barker Development Company that at the expiration of the initial term of the said lease, that Paul M. Kennedy Jr., will not be liable under the terms and conditions including the payment of rent during the said extention of said lease, commencing July 1, 1971.

> Barker Development Company hereby consents to this assignment of said lease to UniBank and Trust Company.

Although this document's initial assignment clause—"assign said lease"—is composed of general terms and, consequently, is of the type the Restatement considers both a delegation and assignment, we cannot ignore the pervasive use of restrictive terms throughout the remainder of this document. In the same paragraph Breitbach "assign[s] said lease," it "covenants" to fulfill the "obligations of said lease" and "hold said uniBank and Trust Company harmless therefrom." By use of this language, Breitbach expressly retains and withholds from its "assignment" the obligations it has under the lease agreement. This language indicates that there was a mere transfer of rights without a delegation and assumption of obligations. Moreover, in the third paragraph, the lessor, Barker, expressly consents to the above assignment. Having accepted such a restrictive transfer, as written, Barker cannot now complain.

Second, we are not limited to consideration of a single document evidencing both the assignment and the acceptance.[1] For

---

1. Assignments, of course, must be accepted; and acceptance may be accomplished either by a writing or by conduct. *See Berg v. Ridgway*, 258 Iowa 640, 140 N.W.2d 95 (1966); *Seebur-ger v. Cohen*, 215 Iowa 1088, 247 N.W. 292 (1933); *State Bank v. Herrick*, 214 Iowa 379, 240 N.W. 242 (1932); *Pickler v. Mershon*, 212 Iowa 447, 236 N.W. 282 (1981).

purpose of satisfying the statute of frauds, it is not necessary that the entire writing be in one instrument or, if more than one instrument is involved, that they be contemporaneous. *Morris Furniture v. Braverman*, 210 Iowa 946, 950, 230 N.W. 356, 358 (1930). *Lee v. Mahoney*, 9 Iowa 344, 348 (1859). Resolution of this case requires our consideration of the above document (exhibit no. 3) in light of the surrounding circumstances. *Restatement (Second) of Contracts* § 160 (Tent. Draft Nos. 1–7, 1973). Plaintiff's exhibit no. 4, entitled *Loan Agreement*, states in pertinent part:

> SECTION 4. *Security Interest.* As security for the payment of any and all liabilities, debtor hereby grants to secured party a security interest in security.
>
> In order to create, preserve, attach, perfect, or validate any security interest granted pursuant hereto or to enable secured party to exercise and enforce its rights hereunder or with respect to such security interest, debtor shall, at any time, on demand by secured party:
>
> A. Deliver and pledge to secured party, indorsed [sic] and accompanied by such instruments of assignment and transfer in such form and substance as secured party may request, any and all instruments, documents, and chattel paper secured party may specify in its demand.
>
> B. Give, execute, deliver, file, and record any notice, statement, instrument, document, agreement, or other paper that secured party may demand or request as necessary or desirable.
>
> C. Keep and stamp or otherwise mark any and all documents and chattel paper and the individual books and records of debtor relating to inventory, accounts, and *contract rights* in such manner as secured party may require.

> D. Permit representatives of secured party at any reasonable time to inspect the inventory of debtor and to inspect and make abstracts from the books and records of debtor that pertain to inventory, accounts, contract rights, chattel paper, instruments, and documents. (emphasis added).

This agreement indicates that the assignment was for security of the loan from uniBank to Breitbach. I believe, as the Restatement clearly indicates, that such an "assignment" should not be considered a transfer of both obligations and rights, but must be singularly interpreted as a mere transfer of rights. This conclusion is not weakened by the broad language used by uniBank in its assignment to Hawkland, which, in pertinent part, states:

> WHEREAS, also, on July 28, 1976, Breitbach assigned its interest as Lessee under said lease agreement to the UniBank and Trust Company, Coralville, Iowa (UniBank) with the written consent of Barker given on that date;
>
> NOW THEREFORE, UniBank does hereby further assign its interest as Lessee under said lease agreement to Hawkland Motors, Inc.

Interpreting the second paragraph consistently with all previous documents, I conclude that it refers to the interests, or rights, the bank received from Breitbach and is not indicative of a previous substitution of the assignee (uniBank) for the assignor (Breitbach).

Thus interpreting this "assignment," I find no basis for holding uniBank liable for the lease obligations for the entire term of the lease and conclude trial court erred in so doing. I thus would reverse and remand this case to trial court for entry of judgment consistent with this dissent.[2]

2. I would make no determination with regard to appellant's concession to liability for the unpaid real estate taxes attributable to the period of time it occupied the premises for the purpose of protecting its collateral but would leave that determination to trial court upon remand.