A. S. PETERSEN, Appellant, v. LARS JENSEN, Appellee.

VENDOR AND PURCHASER: Agreement on Price Not Completed
1 Sale. An accepted offer to sell land at a specified *price* (especially when the offer and acceptance are by telegrams) does not constitute a complete contract of sale, regardless of agreement as to all other details necessarily, and *known and contemplated by the parties* to be, incident to the completed transaction. So held where the agreement embraced all details of the price, but did not cover the matters of an existing lease and easement.

EVIDENCE: Judicial Notice—Nature of Contract of Sale of Real
2 Estate. Judicial notice will be taken of the fact that a contract of sale of real estate is usually an instrument of various details which are essential to a complete understanding and agreement. So held where there was an agreement as to price, but no agreement as to an outstanding lease and an existing easement.

*Appeal from Shelby District Court.*—J. B. ROCKAFELLOW, Judge.

APRIL 13, 1920.

REHEARING DENIED JULY 6, 1920.

SUIT in equity for specific performance of an alleged contract of sale of a farm. The contract, if such, consisted of telegrams and letters. The answer of defendant denied that a contract had been consummated, and pleaded also that the plaintiff was guilty of fraud, in that he was acting as agent for defendant in the sale of said farm, and that he withheld from the defendant the fact that he had offers for said farm substantially greater than the price to which he obtained the defendant's consent. After trial upon the merits, the trial court dismissed the plaintiff's petition, and he appeals.—*Affirmed.*

*Edward S. White,* for appellant.

*J. B. Whitney* and *Cullison & Cullison,* for appellee.

EVANS, J.—The defendant was the owner of a farm in Shelby County, upon which he had lived for many years, and from which he moved to California about three years prior to the transactions herein involved.

1. VENDOR AND PURCHASER: agreement ·on price not completed sale.

The plaintiff was a real estate agent in the near vicinity, and became agent for the defendant, in a somewhat indefinite sense. The parties had been acquainted for a long time. No price was fixed by the defendant upon his farm, nor was any authority given to the plaintiff to sell the same. It fairly appears that it was understood between them that the plaintiff would report to the defendant offers or opportunities for sale, and that, in the event of a sale, the defendant would negotiate through the agency of the plaintiff.

On June 23, 1917, the plaintiff telegraphed the defendant as follows:

"Have offer thirty-two thousand cash for your quarter. One thousand down, balance March 1, 1918."

Before the sending of such telegram, he had an offer from Therkildsen of $210 per acre. The telegram was not answered by defendant. On June 26th, the plaintiff telegraphed the following:

"What is your best price 160 acres farm less my commission. Wire my expense."

On June 27th, the defendant replied as follows:

"Will take two hundred ten dollars cash or two hundred twenty dollars per acre on terms. Twenty thousand cash balance payable March first, 1923, interest 5 per cent payable annually, commission included. Do your best. Wire answer."

On June 28th, the plaintiff replied as follows, by wire:

"Cash offer for farm accepted. Draft and contracts mailed less one hundred sixty dollars commission."

On the same date, he replied also by letter, as follows:

"As per your message I accept your cash terms for the sale of your land in Shelby County, and enclose herewith contracts made in duplicate which please sign and return one to me. I also enclose a draft for $840.00 being the amount of the cash payment less the commission of $1.00 per acre, total $160.00 the balance $32,600.00 due March 1, 1918, at which time you clear the land of all incumbrances. I would suggest that you prepare a warranty deed at once and execute the same together with your wife and forward to any bank in Harlan, Iowa, for their keeping until March 1st, next, then there will be no delay in final settlement in case of death. Please give this your early attention and oblige."

Between June 23d and June 28th, Therkildsen had raised his offer to $215 per acre. On June 28th, he raised it to $217.50 per acre. On June 29th, the plaintiff entered into contract of sale with Therkildsen, as purported owner of the land, for the consideration of $217.50 per acre.

His alleged acceptance of defendant's offer under date of June 28th was rejected by the defendant, and the enclosures in plaintiff's letters were returned to plaintiff by defendant. In the return of such enclosures, the defendant wrote, under date of July 5th, the following letter:

"I am sending back to you the land contract and the draft for $840.00.

"In my telegram I stated that I would be willing to sell the property in question at $210.00 per acre cash, or $220.00 per acre part cash balance 5 years.

"You telegraphed accepting my cash offer and later I received from you the enclosed draft and contract, which is far from being the cash offer you accepted.

"Kindly write fully what you want, as to whether you will pay $33,600.00 cash, as per your telegram.

"If you prefer to buy on terms I will take $20,000.00 cash and allow five years for the balance at 5 per cent per annum, at the price above quoted, viz. $220.00 per acre.

"On receipt of answer I will send to Farmer's & Merchant's Savings Bank in Harlan the papers covering the transaction you decide to make, and will leave the matter of collection and closing the deal entirely in their hands.

"If I do not hear from you within ten days from date I will understand that you do not care to go further in the matter, and you may consider my price as quoted in my last telegram as void.

"P. S. I will give you six months option at $210.00 per acre for the sum of $1,000.00, this to be above full purchase price i. e. I will take $33,600.00 above this $1,000.00 any time during the next six months."

On July 11th, the plaintiff replied by wire and by letter as follows:

"I hereby accept your offer of sale of your Center Township farm at two hundred and ten dollars per acre cash."

"Replying to your telegram of June 28th, and to your letter of July 5th I do hereby accept your offer of $210.00

cash per acre for your farm in Center Township, Shelby County, Iowa, or a total of $33,600.00 cash for the said farm."

On July 18th, the defendant sent a warranty deed, duly executed by himself and wife to the plaintiff as grantee, to a bank at Harlan, to be delivered to the plaintiff, provided he agreed to certain details required by the defendant as a condition to the consummation of the sale. The plaintiff rejected all such details or conditions, and served upon the bank a written demand and tender. He also served the same upon the defendant by letter. Such demand and tender was as follows:

"I do hereby offer to tender and pay to you the sum of $33,600.00 together with six per cent interest thereon from July 11, 1917, the date of closing a contract for the purchase by me of your Center Township, Shelby County, Iowa, farm, to this date, upon your readiness to deliver to me as per said agreement a warranty deed to said premises, upon and after the immediate payment by you of all tax and mortgage liens and all other liens against said real estate, and upon compliance or readiness to comply, by you with all other terms of the said deal, expressed or implied. I therefore request that you notify me when, where and to whom I shall pay the said consideration.

"Dated at Harlan, Iowa, on this 28th day of July, 1917."

The first question presented is whether the telegrams and letters constituted a complete contract of sale between the parties, or whether they constituted simply an agreement upon the important question of price, as the first step toward a complete agreement of sale. Construing the language of these communications in the light of the circumstances surrounding the parties, is it to be implied that an agreement upon the price would constitute a complete contract of sale, regardless of all other details or conditions which would be necessarily involved in the performance of such a contract?

Clearly, a contract of sale of land must involve pre-

liminary negotiations. In such negotiations, the minds of the parties may meet upon some things and fail to meet on others. The first negotiations may be concentrated wholly upon the question of price, as the thing of first importance. Does this fact imply a waiver of all other considerations? If an agreement is reached as to price, may either party then, at his own election, declare the contract completed, and, in effect, spring a trap, and put the other party at his mercy as to all other details and conditions that become necessarily incident to the completed transaction? In this case, the defendant held his title as subject to an easement, whereby another party had a right to the use of a well. His farm was also in the possession of a tenant, whose tenancy would continue until March 1st following. These facts were well known to the plaintiff at the time he was carrying on his communication. He knew that the defendant could not convey to him free from the easement, nor free from the tenant's right of possession until March 1st. It was essential to the complete meeting of the minds of the parties that they should have some understanding as to the reservation of such easement, and some understanding as to the rights of the tenant. In *Kinman v. Botts,* 147 Iowa 474, we had occasion to consider a similar question.

"The correspondence between Leach and defendant was solely as to the price which defendant would take for his farm, and no terms of sale other than as to the price were specifically referred to, although Leach advised defendant that the farm had depreciated during his absence from it, in that the improvements had been allowed to become in bad condition. * * * Now, the sole question to be determined in this case is whether these telegrams concluded a binding contract of sale, in view of the circumstances, so far as they were known to both parties, between plaintiff, the undisclosed prospective purchaser, and defendant. It is a matter of common knowledge that executory contracts for the sale of real property usually contain terms

as to the time of payment of the consideration in a lump sum or by installments, the time of surrender of possession, the payment of the expense of furnishing an abstract, and similar matters. While it is true that an unequivocal present agreement of sale of specific property for a definite price would be valid without statement as to other conditions, all of which would, in such event, be determined by recognized rules of law, nevertheless we think the universally known usage to state such terms in a written contract may be taken into account, where the language of the writings relied upon to constitute a contract leaves room for doubt as to whether the parties intended and understood that such writings should constitute a complete and binding contract of sale."

Looking at the language of the communications and of the circumstances surrounding the parties, we think that a mere agreement on the price did not complete the sale, so as to preclude either party from insisting upon other conditions which were necessarily incident to the sale. This was the theory on which the defendant acted, in sending on a deed to the bank at Harlan. He insisted upon a reservation of the easement, and upon an acceptance by the plaintiff of the lease and rent notes without recourse, reserving to himself the pro rata part of the rent earned up to the 11th day of July. If the parties had been personally in each other's presence at the time that Petersen agreed to the defendant's price, it would hardly be claimed but that the defendant could thereupon bring forward these other details, as matters to be agreed upon, or that a failure of agreement thereon would not defeat a consummation of the sale. Can it be said that the defendant's rights in that regard are any less because he was hundreds of miles distant, and could not communicate except by wire or letter?

No subject except the price was considered in the telegrams and letters. No attempt was made therein to deal with other provisos. It would be a futile expenditure to

2. EVIDENCE: judicial notice: nature of contract of sale of real estate.

deal with other provisos by telegram, before it was known whether or not the parties could agree upon a price. An agreement upon a price was all that was attempted by telegram. Would such agreement close the door, as a matter of law, against further negotiations as to other details? We cannot close our eyes to the fact, universally known to the profession, that a complete contract of sale of land is usually an instrument of many provisos. It usually contains a plurality of details, which are material and essential to a complete understanding between the parties. To incorporate all these in a telegram presents practical difficulties. Though such contracts are often initiated by telegrams, and the basic agreement as to price is frequently reached by that method, it is seldom that a completed contract is arrived at in such manner. We should not strain a point, therefore, to find that an agreement upon the price made a complete contract, and precluded a consideration by the parties of any other proviso or detail essential to a good and fair understanding. The negotiations leading up to such contract, through successive agreements, should be deemed open, until it can be said that the parties themselves, either by language or conduct, mutually closed them. A completed sale is not attained by the mere snapping of the finger by one of the parties, after an agreement upon the price.

There was another condition than these we have specified, made by the defendant. It was that the grantee should pay all the taxes falling due after July 11th. This would include the last half of the taxes payable in 1917, which were already a lien upon the land. It may be that this condition was not justified. In any event, the defendant promptly waived it, and agreed to pay such taxes. As to the conditions first specified, it rested upon the plaintiff to say whether he would accede to them or not. If he would not, he was not bound. Neither was the defendant. The plaintiff chose to avoid all specifications in his objection. His tender casts upon the defendant the burden

of discovering the grounds of plaintiff's own objections. The tender *added* nothing to his rights. In order to accomplish a completed purchase, it was incumbent upon him to arrive at an agreement with the defendant upon such material details as were fairly involved in the sale, so far, at least, as he had knowledge of the existence of the facts which rendered such details material. There was nothing in the telegram from which it should be implied that the later consideration of such facts was to be waived by either party. We are clear that the defendant was not bound to regard the acceptance of his price as a termination of the negotiations as to other provisos. The defendant did nothing thereafter from which such waiver could be implied. On the contrary, he brought them forward in his next communication, and presented them with his tender of the deed. If the plaintiff had then acceded to these, he could have brought about a completed sale. If he had continued the negotiations, he could doubtless have done the same thing. He chose a course, however, that was clearly oppressive to the defendant, and as clearly repugnant to a court of equity in considering a prayer for specific performance thereon.

We reach the conclusion that the plaintiff closed the door too soon, and that his acceptance of the price did not attain a completed sale. This conclusion renders it unnecessary that we consider the question of fraud, or examine the cleanness of plaintiff's hands. The decree dismissing the petition is—*Affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.