R. H. LAMIS, Appellant, v. DES MOINES ELEVATOR & GRAIN COMPANY, Appellee.

No. 40033.

1070

Mᴀʀᴄʜ 11, 1930.

Rᴇʜᴇᴀʀɪɴɢ Dᴇɴɪᴇᴅ Sᴇᴘᴛᴇᴍʙᴇʀ 26, 1930.

*Roberts & Roberts,* for appellant.

*Hughes, Taylor, O'Brien & Faville,* for appellee.

Eᴠᴀɴs, J.—The transaction involved herein occurred in July, 1927. The plaintiff was a grain dealer at Chillicothe, Iowa. The defendant was a grain dealer at Des Moines. The parties

 were well acquainted, and had had similar transactions hitherto. On July 18th, the plaintiff wired the defendant for a quotation on No. 2 yellow corn. The defendant wired in reply that there was no No. 2 yellow corn, and quoted a price of $1.01½ for No. 3 yellow corn. Thereupon, either on the same day or on the following morning, the plaintiff called the defendant by telephone, whereby very brief conversation was had. The plaintiff testified that in that conversation the representative of the defendant at the telephone agreed to ship a carload of corn on July 25th, of approximately 2,000 bushels, to Dudley, Iowa, at the price of $1.01½. Immediately following such conversation, the defendant wrote a letter and a formal confirmation of the sale, including the ordinary details of such a contract. The letter and confirmation were as follows:

"Des Moines, Iowa
"July 19, 1927

"R. H. Lamis,
"Chillicothe, Iowa.
"Dear Sir:

"Confirming our telephone conversation with you today you will find inclosed confirmation for 110,000# car of bulk yellow corn at $1.01½ track Dudley, Iowa, shipment to be loaded July 25th. We are making draft on you through the Bank at Chillicothe. We want to thank you, Mr. Lamis, for this trade and don't forget to let us hear from you when you are in the market again.

"Yours truly, D. M. Elev. & Grain Co.
"J. C. Lake."

The inclosure with the letter was the following:

"Confirmation of Sale
"Des Moines Elevator and Grain Company.
"To R. H. Lamis,                                No. 6522
      "Chillicothe, Iowa
            "Des Moines, Iowa, July 19, 1927.
"We confirm sale made to you today by —— for your account as follows: Bushels 110,000# car. Bulked or Sacked

Bulk. Grain & Grade 3 Yellow corn. Price 1.01½. Basis Track Dudley, Iowa. Shipment Load July 25th. Shipping Instructions: To the order of D. M. Elev. & Grain Co. at Dudley, Iowa. Notify R. H. Lamis at Dudley, Iowa. Routing. Terms. · Settlement to be based on Des-Moines weights and Des Moines inspection, basis present freight rates. Demand Draft, Bill of Lading attached.

"Des Moines Elevator & Grain Co., Seller,<br/>"By J. C. Lake.

"Read carefully, and if correct please sign and return carbon copy to us. If incorrect, wire us promptly."

The plaintiff received this letter on the 20th of July, and apparently acquiesced therein, in that he made no objection or other response thereto. Pursuant thereto, the defendant loaded a car, and had the same regularly inspected by a licensed inspector, and caused the same to be shipped to the plaintiff at Dudley, Iowa. The car did not arrive at Dudley until the 30th, at which time the corn had become heated, and was in a greatly damaged condition. Before discovering its condition, the plaintiff had paid the sight draft drawn on him, and had thereby taken up the bill of lading. Because of the condition of the corn, he refused to accept it from the railway company. It was later sold by the railway company, and the proceeds accounted for to the plaintiff. The transaction resulted in severe loss to the plaintiff, and he brings his action to recover the same from the defendant.

The plaintiff purports to sue upon an oral contract, consisting of his conversation over the telephone, and perhaps aided by the preceding telegrams. He rejects the letter and the confirmation memorandum sent to him on July 19th  by the defendant. His contention is that he had a complete and valid oral contract, and that the defendant could not change it by the subsequent writing. On the other hand, it is the contention of the defendant that there was no complete contract antedating the writing; that the oral conversation was within the statute of frauds, and unenforcible; and that it was indefinite and incomplete. The plaintiff denies that his alleged oral contract was within the statute of frauds. He contends that, with the aid of the telegrams, his oral contract is taken out of the statute of

frauds. He purports to rely upon Section 9932, Code, 1927, which is in the Uniform Sales Act. This section does not, in our judgment, sustain his contention. While it defines the form of a contract, it is not intended to avoid or to qualify the statute of frauds. If this were otherwise a doubtful question, it would be set at rest by Section 9933, which expressly recognizes the statute of frauds as applicable to the provisions of the Uniform Sales Act. The telegrams did not purport to be contractual. A price was quoted without reference to any place of delivery. To prove that a contract resulted, the plaintiff must rely wholly upon the telephone conversation. We deem it clear that such conversation, as testified to, was within the statute of frauds, and not provable orally, for that reason. The oral contract, as testified to by the plaintiff, was so lacking in the ordinary details important to be considered in such a transaction as to invite misunderstanding and dispute in the performance of the same. The course pursued by the defendant in incorporating into a writing the complete contract in all its details, and sending the same to the plaintiff as the contract which it proposed to perform, was a prudent and appropriate one, and was fairly calculated to avoid dispute and misunderstanding at the threshold of the transaction, and before either party had become involved in expense in relation thereto. These parties had had various transactions of this kind before, and this was the course which had been previously pursued. The plaintiff received the letter on the 20th, together with the confirmation, and made no reply thereto. He testified that he did not read the confirmation, because he supposed it was in conformity with their talk. It *was* in conformity with their talk in the sense that it was not inconsistent therewith. It differed from the talk only in the sense that it incorporated the details of the contract. It aimed to leave nothing open to mere implication and possible misunderstanding. The particular complaint of the plaintiff is directed to the fact that the confirmation provided for inspection at Des Moines. He contends that this detail had never been incorporated in any confirmation in their previous transactions.

This letter and confirmation having been received by the plaintiff five days before the date of shipment, and having been retained by him without objection, we think it must be held, as a matter of law, to have become the contract between the parties.

It was the only provable contract in existence. The plaintiff knew that it represented the defendant's understanding of the terms and conditions of the sale. He necessarily knew that, if the defendant shipped the car, it would be in reliance upon the terms of that written communication. If the plaintiff found himself unwilling to accede to the terms there clearly recited, it was his clear duty to so inform the defendant. The defendant could then have withheld the shipment, or he could have acceded to the wishes of the plaintiff. The very misunderstanding which the defendant sought to avoid, and which it had a right to avoid, was secretly cherished by the plaintiff within his own mind. In other words, he concealed his understanding from the defendant for five days, and permitted the defendant to make a shipment which he would presumably not have made if he had known plaintiff's attitude. The plaintiff knew the understanding of the defendant, and at the same time withheld from the defendant disclosure of his own understanding. Our Code Section 11275 has application to such a case. It provides:

"11275. *Understanding of parties to agreement.* When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

The spirit and letter of the foregoing forbid the attitude taken by the plaintiff, and charge him with liability to the extent of his knowledge of the understanding of the other party to the contract.

So far as the telegrams were concerned, they purported no contract. They involved no question except that of price. The plaintiff's testimony concerning a telephone conversation added but little to the telegrams. It has been often held that mere telegraphic agreements upon a sale price do not necessarily attain a completed contract where other material elements of a proposed contract remain to be considered. *Petersen v. Jensen,* 189 Iowa 400. In that case we said (referring to a land contract):

"Though such contracts are often initiated by telegrams, and the basic agreement as to price is frequently reached by that method, it is seldom that a completed contract is arrived at in

such manner. We should not strain a point, therefore, to find that an agreement upon the price made a complete contract, and precluded a consideration by the parties of any other proviso or detail essential to a good and fair understanding. The negotiations leading up to such contract, through successive agreements, should be deemed open, until it can be said that the parties themselves, either by language or conduct, mutually closed them. A completed sale is not attained by the mere snapping of the finger by one of the parties, after an agreement upon the price.''

We reach the conclusion, therefore, that the letter and the memorandum of confirmation sent by the defendant and received by the plaintiff following the telephone conversation must be  deemed written evidence of the contract between them. Therefore the plaintiff was not entitled to recover upon the purported oral contract sued on. Inasmuch as the plaintiff predicated his cause of action solely upon the purported oral contract, it leaves nothing further for us to consider. The plaintiff claims nothing under the written contract, and tenders no issue thereon. We have no occasion, therefore, to consider whether there was any breach of that contract or breach of any duty of care in the performance thereof.

The order of the district court is, accordingly,—*Affirmed.*

MORLING, C. J., and ALBERT, KINDIG, and GRIMM, JJ., concur.