HERMAN E. SNATER, appellee, v. WILL WALTERS and MARY WALTERS (right and true first name unknown), husband and wife, appellants.

No. 49733.

(Reported in 98 N.W.2d 302)

SEPTEMBER 22, 1959.

Fred E. Egan, of Missouri Valley, Harold Hanson, of Logan, and James W. R. Brown, of Omaha, Nebraska, for appellants.

D. D. Hogzett, of Oakland, Smith, Peterson, Beckman & Willson, of Council Bluffs, and Michael Murray, of Logan, for appellee.

THORNTON, J.—Defendants appeal from a decree ordering specific performance of an oral limestone and gravel lease to plaintiff for a term of twenty years with right of plaintiff to renew for an additional twenty years.

Plaintiff is the president of the Missouri Valley Limestone Company and obtains leases for it. He is a man of wide experience in the limestone business.

Will Walters will be referred to as sole defendant. The other defendant, his wife, Kathryn, took no part in the negotiations and has no interest in the real estate in question other than her distributive share. Defendant, 73 years old at the time of trial, owns six farms and was a member of the board of supervisors of Harrison County for 12 years prior to 1946. The record does not show he had any previous experience with limestone or leasing property for the purpose of quarrying limestone.

Plaintiff pleaded the defendants had orally granted him the right to explore and prospect for limestone and if found commercially feasible the right to quarry, produce and sell the same, that the terms and conditions of the oral agreement were substantially (a) he would immediately prospect and explore by core drilling at his expense to determine whether it was economically feasible, (b) plaintiff agreed to keep defendant informed as to results of prospecting, (c) if found feasible plaintiff would be required to commence quarrying operations not later than two years subsequent to April 22, 1957, (d) the term would extend for a period of 20 years from and after April 22, 1957, and (e) plaintiff to pay royalties of 15¢ per ton for limestone quarried, payable at the end of each month's operations.

The trial court found and ordered specific performance of an oral agreement based upon a printed form of lease prepared and used by plaintiff. It consists of four printed pages and 15 numbered paragraphs. This form contains certain blanks and the court found the parties had agreed on the proper insertions for the blanks and the contract as a whole except for the blank in the part preceding Paragraph No. 1 wherein the amount of a down payment to the lessor could be inserted.

■■■ I. This is an equity action and it is our duty to consider and determine the case anew. Lautenbach v. Meredith, 240 Iowa 166, 168, 35 N.W.2d 870, 872. We give weight to the findings of the trial court but do not abdicate our function as triers de novo on appeal. Gaston v. Finch, 246 Iowa 1360, 1365, 72 N.W.2d 507, 510.

1192

II. The alleged oral agreement and the one found by the trial court are for the creation or transfer of an interest in land and come squarely within the provisions of the statute of frauds, section 622.32, subsection 3, Code of Iowa, 1958, and if evidence thereof is to be competent the plaintiff must bring himself within the exceptions, section 622.33. The agreement alleged is a lease for a term exceeding one year. Carter v. Certain-Teed Products Corp., 102 F. Supp. 280.

Plaintiff has the burden of proving the contract declared upon by him by clear, convincing and satisfactory evidence. A mere preponderance is not sufficient. Bell v. Pierschbacher, 245 Iowa 436, 439, 62 N.W.2d 784, 786; Vrba v. Mason City Production Credit Assn., 248 Iowa 264, 268, 80 N.W.2d 495, 498; and 81 C. J. S., Specific Performance, section 143b, page 728.

III. We think plaintiff has not proven the contract alleged in his petition by the required degree of proof. As set out above plaintiff alleged he was immediately to prospect and explore by core drilling and keep defendant advised of the results. There is no evidence plaintiff so bound himself. The printed form found to be the agreement by the trial court contains no such provision but allows the lessee 30 days for prospecting and does not require him to keep lessor informed in any way.

The next two provisions of the contract declared upon are that if the premises were found economically feasible, plaintiff would be required to commence quarrying not later than two years subsequent to April 22, 1957, and the term of said agreement would extend for a period of 20 years from and after April 22, 1957. There is no proof of either of these terms. In the printed form there is no requirement as to the time when the lessee should start quarrying operations. This, as well as the time to cease quarrying if ever commenced, rests in the complete discretion of lessee. The printed form as found by the trial court provides the lease shall continue in force for 20 years subject to such rights of cancelation, termination and renewal as are hereinafter provided and the lessee is given the right to terminate the lease until the end of 30 days from the date thereof and at any time by giving one year's written notice.

The lessee also has the right of renewal upon the same terms and conditions for an additional 20 years, 40 years in all.

▮ That the contract pleaded and the one established are two different contracts is too apparent for discussion. Rule 106, Rules of Civil Procedure, provides, "* * * But where an allegation or defense is unproved in its general meaning, this shall not be held a mere variance but a failure of proof." If we concede the printed form lease was proved we cannot say such proof is within the general meaning of a lease for a term of 20 years, no more or no less. Proof that a lease may be as·short as 30 days or as long as 40 years, in the complete discretion of the lessee, is not within the general meaning of a lease for 20 years. This matter was properly raised in the trial court by objection to the introduction in evidence of the printed form, Exhibit 3, and in the motion to dismiss at the close of plaintiff's case and renewed at close of the whole case. The plaintiff did not ask to amend to conform to the proof when this matter was called to his attention. He elected to stand on the record as made.

▮ ▪ We have repeatedly held a party cannot plead one contract and recover on another. Hughes v. Keokuk & Hamilton Bridge Co., 204 Iowa 1229, 210 N.W. 451; Economy Hog & Cattle Powder Co. v. Honett, 222 Iowa 894, 900, 270 N.W. 842; Lamis v. Des Moines Elevator & Grain Co., 210 Iowa 1069, 1075, 229 N.W. 756; Heim v. Ressel, 162 Iowa 75, 81, 143 N.W. 823, 825-6; In re Estate of Rogers, 246 Iowa 1385, 1387, 72 N.W.2d 454, 455; and cases cited in the above.

The variance cases cited by plaintiff, Cross v. Hermanson Bros., 235 Iowa 739, 742, 16 N.W.2d 616, 618, and McCarville v. Ream, 247 Iowa 1, 8, 9, 72 N.W.2d 476, 480, are not in conflict with our holding here. Cross v. Hermanson Bros. is a workmen's compensation case wherein we said, "* * * Nor is the same conformity of proof to allegation necessary as in ordinary actions."

IV. Furthermore it is not shown by clear, convincing and satisfactory proof there was mutual assent to the terms of the printed form lease, with the insertions decreed by the trial court, nor that the parties ever understood such a lease was agreed to. Dealings between them never got beyond the stage of negotiations preliminary to the formulation and execution of a written

contract. Until such time the parties did not intend there was a binding lease between them.

There were three meetings between plaintiff and defendant —on April 19, 22 and 27, 1957. It is not claimed any lease was agreed to on April 19 or 27. Reliance is upon the second meeting. Plaintiff testified that on April 19 he asked and was granted permission to drill a "Wildcat hole" in the southwest corner of defendant's farm provided the tenants gave their permission and were paid the damage to their crop. Defendant said he told plaintiff, "I didn't care if he went in there and drilled a few holes but he would have to settle it with the tenants." This is the extent of the first talk.

According to an exhibit introduced in evidence by plaintiff, a driller for the Missouri Valley Limestone Company, evidently at plaintiff's direction, completed drilling five holes on defendant's farm on or before April 22. The evidence is it took a half day to complete drilling a hole in the area in question. Unless drilling of at least three of the five holes was commenced without defendant's permission his version of the first talk between the parties must be accepted. The meeting on April 22 was not concluded before early afternoon.

At the second meeting, also at defendant's home, plaintiff was accompanied by his associate McArthur, then a vice-president of Missouri Valley Limestone Company who arranged its finances and assisted plaintiff in obtaining leases. Both plaintiff and McArthur testified to what occurred at this time. Plaintiff did not say a lease was agreed to. He first testified there was no discussion of the length of the term of the lease at this meeting. Later, after a recess, plaintiff said defendant was informed the term of the proposed lease was 20 years with right of renewal for another 20 years. According to plaintiff he told defendant "we would pay the going rate of royalty, whatever that was. At that time I did not know."

Other testimony of plaintiff as to the April 22 talk is:

"I don't believe Mr. Walters asked too many questions. I don't recall any in particular, except in generalities what he would get out of it, and I could not give him a definite answer at that time. * * * Mr. Walters was busy with his garage and he says 'give me a little time and get this work out of the way.'

And as I recall, we set a date two or three days later for another meeting for the purpose of getting a lease signed up. * * *

"Q. Was any of Exhibit 3 [the lease form] read aloud? A. Yes, *certain phases of it.* * * *."

As a witness plaintiff said he explained to defendant, "we did not then know what portion of his farm we would develop * * * but there would have to be an area for stock piles and plant site; * * * so the spoil area could not be determined as to size. * * * Mr. Walters was concerned about the destruction of his property and wanted to get an idea of how much the royalties would amount to."

When asked whether defendant said anything when he was told "we would pay the going rate" of royalty (whatever that was) plaintiff testified, "During all this discussion he was more interested in getting back to his garage. * * * I made the statement to Mr. Walters that we do not proceed with proving up of property without a lease."

According to plaintiff, Walters took the form lease to the kitchen to see his wife and after three to five minutes returned with the statement, " 'Go ahead; we will get along all right.' " The other meeting was than arranged for two days later. Concededly no blanks in the form lease were filled in and of course no lease was ever signed.

Plaintiff attaches great weight to the testimony last quoted. We think it may not fairly be taken to indicate defendant's assent to the terms of this long lease form and the insertions in the blanks therein decreed by the trial court. The statement attributed to defendant is equivocal. It may well have been intended by defendant, and understood by plaintiff, to indicate the former's willingness to negotiate further for a lease or his consent to the drilling of more test holes pending the outcome of negotiations.

Mr. Frank McArthur testified that on April 22 he read the lease form to defendant paragraph by paragraph and defendant indicated his approval of the various provisions. McArthur's testimony in this respect is inconsistent with plaintiff's evidence that only "certain phases" of the form were read aloud. And defendant denied that McArthur read the lease to him. McArthur's evidence is nothing was said regarding the amount of

the down payment plaintiff should make upon the lease although, as stated, the form contains a blank for the insertion of such amount.

Mr. McArthur testified that near the end of the meeting on April 22 defendant said:

"I am busy today. I have to work on my garage which I left too long now. I don't want to take the time to sign the lease, but we will get along.

"Q. Did you make any answer to this statement? A. I stated to Mr. Walters that that would be breaking a precedent in so far as the Missouri Valley Limestone Company was concerned, but that if we did break that precedent would he promise he would lease to no one else.

"Q. What did Mr. Walters say then? A. He said 'I will not lease to anybody else.'

"Q. Did any further conversation occur then? A. No, sir.

"Q. What is the fact as to whether there was any conversation with respect to another meeting? A. There was no conversation relative to any other meeting on the 22d to my knowledge."

This last answer is quite inconsistent with plaintiff's testimony that the other meeting was then arranged.

Regarding the final meeting on April 27 McArthur testified he told defendant the drilling done the past few days showed a rather substantial amount of quarryable limestone on his property, that "we" had discussed the terms of the lease at a prior meeting and were very much interested in leasing his property, reducing a lease to writing and leasing his property; defendant stated that as far as leasing his property was concerned he was interested in immediate production; McArthur said the earliest possible date they could get in production would be March 1 (about 10 months) but that gave them time so they could open within a two-year period; the parties then got into an argument, McArthur lost his patience, warned defendant not to lease to anybody else and walked out.

On cross-examination Mr. McArthur admitted that just before the argument commenced he said to defendant, in substance, "I am going to make a proposition subject to the approval of

Mr. Snater. Would you give us a lease if we guaranteed to produce limestone within 24 months?"

It is clear from the testimony of both plaintiff and McArthur that defendant was much interested in the immediate production of limestone if he made a lease. Plaintiff testified that when defendant was told at the third meeting it would take about two years to get production under way, he said he did not want the property lying idle. Also that defendant said, "'If I lease that land I want immediate production.'"

Further reference to the evidence seems unnecessary. Enough has been set out to demonstrate that these parties never got beyond the state of negotiations for a lease, that if agreement upon the different terms should be reached a written lease was within the contemplation of the parties and no enforceable contract existed until the writing was executed.

If, as plaintiff contends, the different terms of the lease form were agreed to it is strange no attempt was made on April 22 to fill in any of the blanks in the form or to have it signed without the necessity for a third meeting. If defendant had agreed to the lease at the second meeting there was no occasion for McArthur to ask that he refrain from leasing to anyone else. Such request is quite irreconcilable with the thought plaintiff then had a lease. If defendant said he would not lease to anyone else the statement should not be construed as forever depriving him of such right but rather of affording opportunity to complete negotiations for a lease. If plaintiff and his then associate, McArthur, understood a lease had been agreed upon at the second meeting McArthur would not have opened the third meeting with the assertion that "we" had *discussed* terms of the lease and were very much interested in leasing his property. Nor would defendant have said, "'If I lease that land I want immediate production.'" McArthur's query to Walters at the third meeting whether he would give them a lease if they guaranteed production within 24 months cannot be reconciled with their contention a lease was definitely agreed to five days earlier.

Quite in point here is this statement approved in Brandt v. Schucha, 250 Iowa 679, 691, 96 N.W.2d 179, 186: "'And there are numerous cases supporting the rule that where the terms of a contract * * * are not fully and definitely settled in

the preliminary negotiations, and a written or more formal contract embodying the completed contract is contemplated, no valid and enforceable contract exists until the execution of the written or more formal instrument.' "

See also the citations in the Brandt opinion and 17 C. J. S., Contracts, section 49, page 390 ("There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into.").

V. Plaintiff contends there are certain covenants implied by law, which, together with those expressed in the lease form, created a complete contract. Precedents are cited to the effect there is an implied covenant on the part of the lessee of a mine to work it with reasonable diligence. Price v. Black, 126 Iowa 304, 306, 101 N.W. 1056; McColl v. Bear Creek Coal Mining Co., 162 Iowa 491, 495, 143 N.W. 532.

The contention cannot be accepted under the circumstances here. The lease form contains express provisions in direct conflict with, and which negative the existence of, the implied covenants contended for. Paragraph 4 provides: "* * * the conduct of operations hereunder shall be at the complete discretion of Lessee. Such complete discretion includes * * * the unqualified right to determine * * * the manner in which, the time or times when, and the extent to which any development, mining, quarrying * * * and marketing of such limestone * * * shall begin, be prosecuted, suspend, recommence, and cease." And paragraph 14 states: "This Lease embodies the entire agreement of the parties and no promises, covenants or obligations not expressed herein shall be implied."

While there may be an implied contract on a point not covered by an express contract certainly there can be no implied contract on a point fully covered by an express contract and in direct conflict therewith. See Maasdam v. Estate of Maasdam, 237 Iowa 877, 887, 24 N.W.2d 316, 321; Lautenbach v. Meredith, supra, 240 Iowa 166, 168, 35 N.W.2d 870, 871; City of Pella v. Fowler, 215 Iowa 90, 96, 244 N.W. 734, 737; Hawn v. Malone, 188 Iowa 439, 444, 176 N.W. 393, 395; 17 C. J. S., Contracts, section 5; 12 Am. Jur., Contracts, section 7.

VI. As previously stated, the contract declared upon and the one enforced by the trial court fall squarely within the

statute of frauds, Code section 622.32, subsection 3. Section 622.33 states the provisions of subsection 3 do not apply where any portion of the purchase money has been received by the vendor or when the vendee, with the actual or implied consent of the vendor, has taken and held possession of the premises under the contract or when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds.

Part performance, taking possession or payment of rent under an oral lease for a term of more than one year will not take the case out of the statute of frauds. Powell v. Crampton, 102 Iowa 364, 71 N.W. 579, and citations; Halligan v. Frey, 161 Iowa 185, 188, 141 N.W. 944, 49 L. R. A., N. S., 112, and citations. However, under certain facts the lessor may be estopped to set up the statute. Halligan v. Frey, supra.

Plaintiff did not plead defendant was estopped to set up the statute of frauds but did allege he should be equitably estopped from revoking the oral contract declared upon. The obvious answer to this is that neither the oral contract declared upon nor that decreed by the trial court has been established by the requisite degree of proof. There is therefore no estoppel to set up the statute of frauds in defense of plaintiff's action. In our opinion the facts here are not comparable to those in Halligan v. Frey, supra, Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 48 A. L. R.2d 1058, or other precedent called to our attention in which estoppel has been applied against the party claiming the benefit of the statute. See Ferrill v. Collins, 225 Ark. 247, 281 S.W.2d 939, and Feinberg v. Pfeiffer Co., Mo. App., 322 S.W.2d 163.

In Miller v. Lawlor, supra, upon which plaintiff relies, we found "definite (practically undenied) evidence of 'a clear and definite oral agreement', relied on by plaintiff to his detriment." (Page 1154 of 245 Iowa, page 273 of 66 N.W.2d.) Nothing of that kind appears here. There is insufficient evidence not only of an oral rental contract but also that plaintiff relied upon any such claimed contract to his detriment. On the contrary plaintiff seemed to be fully aware of the importance of negotiating a written lease.

In argument it is said plaintiff core drilled defendant's farm in reliance on the alleged oral lease. As previously explained, five of the holes drilled by an employee of the Missouri Valley Limestone Company were completed on or before April 22 when it is claimed a contract was agreed to. And, according to the same exhibit, nine of the holes were completed after April 27 when defendant refused to sign a lease and negotiations between them were ended. Only four holes were completed between April 22 and 27.

There is no showing these four holes were drilled in reliance on the claimed oral lease and it can scarcely be argued the others were. Lowery v. Lowery, 117 Iowa 704, 711, 89 N.W. 1118, 1121; and annotation 101 A. L. R. 970. Certainly most of the holes are not "exclusively referable" to the contract and it is not clearly shown any of them are. See in this connection Fairall v. Arnold, 226 Iowa 977, 987–8, 285 N.W. 664, 669, and citations; In re Estate of Karr, 235 Iowa 351, 368, 16 N.W.2d 634, 642; Vanston v. Rupe, 244 Iowa 609, 620, 57 N.W.2d 546, 552. Evidently the holes were drilled largely for plaintiff's information and to serve as an inducement to defendant to enter into a lease, rather than in reliance upon one already agreed to.

VII. Appellant advances other propositions which seem to have merit. One is that the contract decreed by the trial court is without consideration and lacks mutuality of obligation. However, we find it unnecessary to determine the matter.

The cost of printing the record in excess of $1.50 per page is taxed to appellant, all other costs are taxed to appellee.

For the reasons pointed out the decree is reversed and the cause is remanded for decree dismissing plaintiff's petition.— Reversed and remanded.

All JUSTICES concur except PETERSON, J., who takes no part.