Ronald ALPEN, Appellee,

v.

Lyle A. CHAPMAN, Appellant.

No. 53899.

Supreme Court of Iowa.

Sept. 2, 1970.

David L. Scieszinski, Wilton Junction, for appellant.

Lewis & Stevens, Muscatine, for appellee.

BECKER, Justice.

Plaintiff brought suit at law for money had and received. The jury returned a verdict for plaintiff. Defendant appeals on several grounds. We affirm.

The controversy arises out of the sale, or attempted sale of the Iowa Industrial Supply Company, located at Durant, Iowa. The business consisted of a substantial inventory of various industrial supplies which were sold to manufacturers in an area comprised of eastern Iowa, western Illinois and as far north as southern Wisconsin. The assets were owned by a corporation of which defendant Lyle Chapman owned 199 shares and Myron Darling owned 100 shares. Chapman and Darling started the business and incorporated it in April 1965 under an agreement which contemplated that Chapman pay $4975 for 199 shares of stock and Darling pay $2500 for his 100 shares. Chapman also put $20,025 into the corporation for which he received a chattel mortgage on all assets of the corporation. Darling operated the business.

In November 1967 Darling left the company but retained his corporate stock. The corporation has a large inventory but had been losing money and owed defendant Chapman some $43,656.

At this time plaintiff Ronald Alpen had a trucking operation of his own. He was acquainted with defendant Chapman both as a neighbor and through mutual commercial contacts. The two began to discuss potential sale of part or all of the supply business to plaintiff. Plaintiff wanted to get out of trucking and defendant wanted to sell part or all of his interest in Iowa Industrial Supply Company.

Both parties agree defendant wanted to sell the supply company for $58,000 but beyond that there is little agreement.

Plaintiff's petition makes the following claims: (1) On December 9, 1967 plaintiff paid defendant $3000 to be applied against acquisition of an undetermined interest in the corporation; (2) the interest to be acquired and the terms of the sale were to be negotiated in the future and incorporated into a written agreement between the parties; (3) on January 6, 1968, plaintiff paid

defendant another $10,000 under the same circumstances; (4) the extent and nature of the interest to be acquired or of the sale itself were never determined, agreed upon or reduced to writing; (5) the certificate of incorporation was cancelled by the Secretary of State on December 8, 1967 and this was not made known to plaintiff; (6) defendant was not the sole owner of the capital stock of the corporation prior to its cancellation; (7) the company was insolvent prior to corporate cancellation and this fact was not made known to plaintiff; (8) defendant knowingly and willfully misrepresented the value of the inventory; (9) plaintiff received no consideration for the $13,000 paid which was money had and received for use of plaintiff; (10) plaintiff has requested return of the money which request was refused.

Defendant admitted receipt of the $13,000, denied all else and for affirmative defense asserted: (1) defendant by oral contract sold all his right, title and interest in the Iowa Industrial Supply Company to plaintiff; (2) pursuant to the sale, plaintiff took possession, management and control of the business; (3) the terms of the sale were:

| "Total Purchase Price | $58,000.00 |
|---|---|
| "Down Payment | $13,000.00 |

"The unpaid balance to draw interest at the rate of 6% per annum payable in installments as follows:

| "(a) | 1969 | $ 5,000.00 plus accrued interest |
|---|---|---|
| "(b) | 1970 | $ 7,500.00 with accrued interest |
| "(c) | 1971 | $10,000.00 with accrued interest |
| "(d) | 1972 | $12,000.00 with accrued interest |
| "(e) | 1973 | $10,500.00 with accrued interest |

---

"Seller to be liable for all accounts payable as of January 1, 1968 but that the Buyer agreed to apply the balance of accounts receivable as of January 1, 1968 to reduce any outstanding accounts payable as of January 1, 1968."

The court's instructions were somewhat unusual in that the principal instruction did not attempt to outline the component parts of plaintiff's case and impose the burden of proof on plaintiff as to such propositions. Rather, the instruction told the jury plaintiff must prove the allegation of the petition by a preponderance of the evidence and then immediately recognized two vital issues in the case. Damages were not sought and not alluded to; the verdict was simply a finding for plaintiff. The $13,000 amount was, of course, predetermined. Defendant does not attack the manner of submission but attacks the instructions on other grounds hereafter to be considered.

The two issues submitted were:

"1. Whether or not, on December 9, 1967, it was the intention of the plaintiff and the defendant that their negotiations for an agreement for the sale of the Iowa Industrial Supply Company were to be reduced to writing and signed by the parties before they would become a contract; and

"2. Whether or not, on December 9, 1967, plaintiff and defendant entered into an oral contract for the sale of the Iowa Industrial Supply Company."

I. We first consider defendant's various attacks on the instructions. The legal theories upon which the case was tried and submitted are thereby brought into immediate focus.

Action for money had and received is not often used as a theory of recovery in Iowa. The theory and broad applicable principles are succinctly stated in In Re Estate of

Stratman, 231 Iowa 480, 488, 1 N.W.2d 636, 642:

"Appellant, under the liberal rules of pleading in probate, fairly stated a claim for money had and received. It is elementary that to establish such a claim, it is essential merely to prove that a defendant has received money which in equity and good conscience belongs to plaintiff. It is not necessary to prove a promise to pay. Although this form of action is ordinarily one at law, it is governed by equitable principles and is favored by courts. (Cases cited)." Cf. Barker v. Wardens & Vestrymen of St. Barnabas Ch., (1961) 171 Neb. 574, 106 N.W.2d 858.

McClean v. Stansberry, 151 Iowa 312, 314, 315, 131 N.W. 15, was a case where plaintiff paid the clerk of a public sale the sum of $60 for a mare that proved to be unsound. Plaintiff returned the mare to its owner but the defendant-clerk refused to return the $60. Except for the interposition of a stakeholder, the case has some striking similarities to the case at bar:

"* * * It (plaintiff's petition for money had and received) is not a demand based on the purchase of the mare. *It is a demand for money paid or delivered to the defendant for the consummation of a contract for a purchase from Paul, which was never fully accomplished.* In legal contemplation, the money in the defendant's hands never became the money of Paul, and when the sale was rescinded defendant held such money, not for Paul, but for the plaintiff, and it was his duty to pay it over to him when called for. Whether under the ancient practice the appropriate form of action for its recovery would be in trover for its tortious conversion, as plaintiff seems to think, or in assumpsit for money had and received, is not a matter of material inquiry. * * *.

"* * * 'It is not essential to the maintenance of this action that there should be any express promise to pay, for the law implies a promise where justice imposes a duty. No privity is necessary; the plain-

tiff may waive all tort, trespass, and damages, and claim only the money defendant has actually received.' In another case the same court has stated the rule thus: 'There need be no privity of contract alleged or proved, other than such as arises out of the fact that the defendant has received the plaintiff's money, which in equity and good conscience he ought not to retain.' (Cases cited)." (Emphasis supplied).

■ Defendant's answer is to plead a contract. It is true, money had and received is not a proper action for breach of a contract which has not been rescinded. 1 Am.Jur.2d, Actions, § 14, p. 554. If plaintiff and defendant actually entered into a contract, plaintiff must fail under his theory and manner of presentation of his case. Stated otherwise, if there was a manifestation of mutual assent and a contract was made, plaintiff would have to seek rescission and all the issues would be changed.

The trial court recognized plaintiff's theory and defendant's response. It instructed the jury that in order to find for plaintiff they must find there was no contract. If it was intended there be no contract until the terms thereof were reduced to writing or if there was a material misrepresentation by defendant that prevented a mutual assent there would be no contract. In either event, plaintiff would be entitled to recover, otherwise not.

■ II. As to the first issue, the court told the jury that if they found the parties orally agreed to enter into a written contract and that the contract was not to become effective until it was reduced to writing and signed by the parties, they need go no further as their verdict would have to be for plaintiff.

The instruction properly covered the law of oral contracts which may be made prior to a written contract. Marti v. Ludeking, 193 Iowa 500, 503, 185 N.W. 476:

"* * * The law is well settled in this state that, where the terms of an agreement are definitely fixed, so that nothing remains

except to reduce them to writing, the oral contract will be upheld, unless it was understood by the parties that it was not to become effective until reduced to writing. Alexandria Billiard Co. v. Miloslowsky, 167 Iowa 395, 149 N.W. 504."

■ However, the terms of the contract must be fully and definitely settled in the preliminary agreement or no such oral contract will be recognized. Snater v. Walters, 250 Iowa 1189, 1197, 98 N.W.2d 302; Brandt v. Schucha, 250 Iowa 679, 691, 96 N.W.2d 179. It is well to recognize we have no problem of the statute of frauds here such as was present in the last two quoted cases. Absent the problem of the statute of frauds, whether preliminary negotiations remained at that, or actually ripened into an oral contract, depends upon the intention of the parties as gleaned from the facts of the case. Hayne v. Cook, 252 Iowa 1012, 1020, 109 N.W.2d 188, 17 C.J.S. Contracts § 49, p. 695.

■ The instruction clearly recognized defendant's contention that there can be an oral contract if the parties so intend even though the parties intend to reduce the contract to writing at a later date. The question was properly submitted to the jury as a fact question.

III. The alternate fact question posed by the second issue involves the problem of whether an innocent misrepresentation can be held to prevent a manifestation of mutual assent.

The court instructed in part: "A misrepresentation, even though innocently made, will not prevent a meeting of the minds, unless it relates to a material matter. However, innocent misrepresentations with respect to material matter may preclude a meeting of the minds and prevent the formation of a contract." The instruction was balanced with an additional paragraph stating the converse of the proposition.

There is a distinction between fraud and misrepresentation. The distinction is rec-

ognized in Restatement, Contracts, §§ 470, 471, page 890, where the terms are differently defined. At section 476, page 908 of Restatement, Contracts, the authority continues:

"(1) Where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or material misrepresentation, the transaction is voidable as against the latter and all who stand in no better position, subject to qualifications stated in §§ 480, 481, 486, and with the exceptions stated in Subsections (2, 3)."

A valuable annotation to Restatement, Contracts, was prepared for Iowa in 1934 by Professor O. K. Patton. In connection with section 476, supra, he states at page 701, 702 of Restatement, Contracts, Iowa Annotations:

"A. EFFECT OF INNOCENT MISREPRESENTATION IN ACTION AT LAW. The following Iowa cases are not in accord with the rule stated in this section and the statement in Comment b and *refuse to allow relief at law* for innocent misrepresentation, whether the injured party elected to affirm and sue for damages or attempted to avoid the transaction: (Cases cited).

"B. EFFECT OF INNOCENT MISREPRESENTATION IN ACTION IN EQUITY. The following Iowa' *equity cases* are clearly in accord with the rule stated in this section and the statement in Comment b, and hold that avoidance *will be allowed* for material misrepresentation which is relied upon, although the same is innocently made: (Cases cited)." (Emphasis supplied).

This distinction is borne out by examination of the cases and was reaffirmed in Detrick v. Aetna Casualty and Surety Co., (Iowa), 158 N.W.2d 99, 106, where we examined the matter at some length and said:

" 'However, the converse of the rule that what amounts to fraud in law constitutes

fraud in equity is not in all instances true, since the equitable theory of fraud is more comprehensive, and while an innocent mis-, representation may be insufficient to sustain a tort action for deceit it may be sufficient to sustain an action for rescission or for general equitable relief. * * *.' " Cf. 37 C.J.S. Fraud § 4; 37 Am.Jur.2d, Fraud and Deceit, § 326.

■ The foregoing principles do not make the court's instruction in this case erroneous. An examination of the Iowa cases cited by Professor Patton indicates the importance both of the question of whether the case was at law or in equity and the manner in which the question arose. None of these cases arose under an action for money had and received which is a law action but is governed by equitable principles and is favored by the courts.

In Farnsworth v. Produce & Ice Co., 161 Iowa 170, 178, 141 N.W. 940, we said: "A well-established rule is that to entitle a party to relief in equity, by reason of fraudulent misrepresentations, it is not necessary that it be shown that the party making the false statements knew that they were false when he made them. They may have been innocently made, yet if a positive statement of fact is made and relied upon by the other party, to his prejudice to the extent that he is led to act thereon, equity will afford relief."

The trial court adapted this and similar Iowa statements to his instructions to the jury. In doing so he did not err.[1]

■ IV. Plaintiff's second assignment of error involves the court's failure to direct a verdict in defendant's favor. In considering this issue we consider the evidence in the light most favorable to plaintiff. Rule 344(f) (2), Rules of Civil Procedure.

■ The jury could find that on December 9, 1967, Mr. Alpen at the defendant's urging and with only a very cursory examination of the business enterprise, paid defendant $3000 as a down payment on the acquisition of an interest in the business. The extent of the interest was later to be determined by the parties. Defendant Chapman gave numerous widely variant versions of just what he contended he was selling and just what he contended plaintiff was buying when the $3000 was paid on December 9, 1967.

After making the $3000 payment plaintiff spent some time at the business office but still spent substantially all of his time selling his trucking business. On January 6, 1968 plaintiff's own business had been sold. He paid another $10,000 to defendant, moved into the office, began to call on customers and attempt to run a business about which he had no prior knowledge. As he carried on the operation he learned for the first time that the corporate charter had been cancelled, the accounts receivable and accounts payable were not about equal (as he had been told), but the accounts payable were about $4700 higher than the accounts receivable, the inventory looked to be at a lot less than the $58,000 in value that he was told was there. He also learned of Darling's outstanding interest. At this time the buyer and seller still had not agreed on the amount of interest to be purchased, the terms of payment, whether the business would operate as a sole proprietorship, a corporation or a partnership.

Nevertheless, plaintiff continued to try to run the business with some help from defendant. Finally in February the parties each got a lawyer. There was a conference but defendant didn't attend. Questions were asked about the Bulk Sales Act, how Darling's interest was to be disposed of, who would be responsible for prior obliga-

---

1. See Corbin on Contracts § 613 and § 1103 for discussion of application of equitable principles to law actions where, as here, there has been a dual line of authority in the former dual system of separate equity and law courts.

tions, unpaid taxes on the business, transfer of permits, and the like. There was discussion as to what plaintiff was buying and in what manner he was to acquire the business. Plaintiff's lawyer, Roger Fair, stated nothing was settled but he knew defendant was going to South America on a business trip. Mr. Fair thereupon tried to have the $13,000 down payment placed in escrow but defendant refused to do this.

Nothing came of this meeting. Plaintiff tried to get his money back but was refused. He continued in the business until May 1, 1968. Between May 11 and May 19, 1968, plaintiff and his wife and defendant Chapman, his wife and son all participated in an inventory of the merchandise on hand. After the May inventory plaintiff's connection with the business ceased.

Defendant's evidence was highly contradictory. At one point defendant would claim a complete oral agreement to buy the entire business was made on December 9, 1967. In the next breath defendant claimed the amount of interest plaintiff was buying was less than 50 percent.

Defendant largely ignored Darling's interest. It was his view the cancellation of the corporate charter wiped out Darling but left him (Chapman) in 100 percent control. When informed of almost $5000 difference between accounts receivable and accounts payable, he said he didn't know anything about it but would not be responsible for the difference.

The record convincingly demonstrates a jury question was generated as to defendant's liability on the theory he was holding money as down payment on a proposed contract that was never assented to by either party.

V. Plaintiff produced Mr. D. W. Carver, a Certified Public Accountant, who testified: "I have had an opportunity to examine some of the records of the Iowa Industrial Supply Company. A series of bank statements, Exhibit 7; a series of bank deposit slips, Exhibit 8; a series of checks,

Exhibit 9; sales records, Exhibits 6A through 6L, inclusive; cash disbursements record and a summary of sales, Exhibit 4; cash disbursements record and a summary of sales marked Exhibit 5; accounts receivable as of January 6, 1968, Exhibit 20; accounts payable as of the same date, Exhibit 21; United States Corporation income tax return for the period ending March 31, 1967, Exhibit 3; a series of check stubs between October 6, 1967 and July 15, 1968, Exhibit 8B; the inventory, Exhibit 13A through 13E, inclusive; sales records from December 9, 1967 through May 1, 1968, Exhibit 18; purchases for the same period, Exhibit 19; and the Plaintiff's Exhibit 1, including Exhibits 1A through 1F, inclusive. In addition, I have examined other checks and bank statements for the Iowa Industrial Supply Company for the period April 1, 1967 up to the point where these exhibits begin.

"Q. Then in addition to these exhibits did you also examine other checks and bank statements for the Iowa Industrial Supply Company for the period from April 1st of 1967 up to the point where these exhibits begin? A. Yes.

"MR. SCIESZINSKI: Your Honor, I object to any evidence as to any materials not offered and admitted into evidence here, as being incompetent, irrelevant and immaterial, and not the best evidence.

"THE COURT: Sustained.

"MR. STEVENS: Well, Your Honor, the exhibits are tendered into court here." The court subsequently allowed testimony based on this examination of books and records of the company. Defendant complains of this procedure as expert testimony based on hearsay, citing Dougherty v. Boyken, (Iowa) 155 N.W.2d 488.

■ Dougherty v. Boyken, supra, dealt with testimony of an accident reconstruction expert and referred to factual information passed on to the expert by another witness. This information was not shown to be in the record. The problem here in-

volves examination of books and documents of a going business for the purpose of expert testimony. We find no Iowa case where the foundation rules for such testimony have been considered. However, sound authority for the procedure used is found in IV Wigmore on Evidence, Third Ed., § 1230, pages 434, 435, 437.

"§ 1230. (II) Voluminous Documents (Accounts, Records, Copyright Infringements, Absence of Entries). Where a fact could be ascertained only by the inspection of a large number of documents made up of very *numerous detailed statements*— as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank-ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper.

"Most Courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available: * * *

"The most commonly recognized application of this principle is that by which the state of *pecuniary accounts* or other business transactions is allowed to be shown by a witness' schedule or summary. * * *."

The requirement that the documents relied upon be made available to the other side was sufficiently met here. Counsel for plaintiff stated the exhibits were tendered into court. Defense counsel made no effort to determine what additional com-

pany records were used by the C.P.A. or whether they were available for cross-examination. The court did not err in admitting expert testimony based on this foundation.

VI. Defendant also objects to the expert's expression of opinion of the inventory value based on the following record:

"Q. Mr. Carver, in making the determination of the inventory as of December 9th of 1967, what adjustments did you make for items for which there was no value shown in the inventory schedule, Exhibit 13–A through 13–E inclusive? A. There were—oh, approximately five or six sheets that were not priced, the inventory quantities were shown but there was no pricing, so I contacted Mr. Mel Alloway at Kacena, and gave him copies of these sheets and he went through—

"MR. SCIESZINSKI: Your Honor, I object to any further testimony with regard to any conversation with this individual, for the reason it calls for hearsay testimony. The nature of the question did not disclose this type of an answer, and I was not able to interpose an objection as hearsay.

"THE COURT: Overruled. I think he could check that. I think the jury understands that, that this is the method he is using to arrive at this particular determination, again. Complete your answer, Mr. Carver."

██ Here defendant is on more solid ground. This was an injection of outside information, not within the expertise of the witness, which had been procured *dehors* the record. The situation is very similar to the basis for opinion evidence offered in U. S. Homes, Inc. v. Yates, (Iowa) 174 N.W.2d 402 and also contains some of the factors considered in Dougherty v. Boyken, supra. Admission of testimony based on the inventory prices procured outside the record was error.

Whether the error was such as to justify reversal is another matter. Here the inventory referred to consisted of 76 pages, made up by both parties and their families, of various small items held for sale. The value of each item had been determined from the books of the company. Six pages of miscellaneous items were not valued. These items consisted of key blanks, parts for wrenches, screwdrivers, chisels, pliers, wrenches, punches, drills and miscellaneous items. Except for the drills the items were a very small part of a large inventory. With the drills as the most valuable items, the values arrived at by the expert was less than five percent of the $43,000 total inventory. We hold the trial court erred in this particular but the error was not sufficient under the circumstances to require retrial.

VII. Defendant also complains of the failure to submit his affirmative defense. He pled a contract had been entered and pled the specific items of the contract. We have searched the record for evidence of the various items of the claimed contract and find none. The statements illicited on cross-examination of plaintiff were entirely insufficient.

In Doser v. Interstate Power Company, (Iowa) 173 N.W.2d 556, 559, we said: "The theories of both parties to a lawsuit, as far as they are supported by the pleadings and substantial evidence, must be submitted and it is prejudicial error to fail to do so. Kuehn v. Jenkins, 251 Iowa 718, 730, 100 N.W.2d 610. * * *." We find no substantial evidence to support defendant's affirmative defense. It was therefore not error to refuse to submit the defense as pled. The instructions adequately informed the jury of defendant's claim that the parties had entered into a contract.

VIII. The court properly instructed as to plaintiff's burden to prove his case by a preponderance of evidence. There is no merit in defendant's contention the jury should have been told the evidence must be satisfactory, clear and convincing.

Ordinarily in a law action there is but one quantum of proof and that is by a preponderance of the evidence. Davis v. Davis, 261 Iowa 992, 999, 156 N.W.2d 870, 875.

IX. Defendant assigned 29 errors in his brief. He totally failed to cite authority for or argue 21 of the specific assignments. Those errors are not only deemed waived, 344(a) (3), R.C.P., they constitute an unreasonable burden on this court. The same should be said for the prolific use of questions and answers in the record. While use of questions and answers are deemed necessary at times by all attorneys, the record here abused the latitude historically allowed by this court. Counsel on both sides appear to be equally at fault in this regard.

We have considered each of the errors assigned and argued by defendant but have grouped them in what appeared to be the best manner for final disposition of the case. We find no reversible error.

Affirmed.

All Justices concur, except LARSON, J., who concurs in the result, and UHLENHOPP, J., who takes no part.